**C. J. DICK TOWING CO. v.
THE LEO et al.**

**Petition of BUTCHER–ARTHUR, Inc.**

**BOZEMAN & GRAY v. THE DIS-
PATCH et al.**

**TEXAS CO. v. THE DISPATCH et al.**

A. D. Nos. 808, 810, 824, 860.

United States District Court,
S. D. Texas, Houston Division.

March 12, 1951.

Supplemental Opinion May 29, 1951.

Fulbright, Crooker, Freeman & Bates, Houston, Tex. (Carl G. Stearns, M. S. Mc-Corquodale, and Sweeney J. Doehring, all of Houston, Tex.); for C. J. Dick Towing Co.

Royston & Rayzor, Houston, Tex. (Robert Eikel, of Houston, Tex.), for Commercial Petroleum & Transport Co., formerly Butcher-Arthur, Inc.

Clarence S. Eastham, of Houston, Tex. and Terriberry, Young, Rault & Carroll, of New Orleans, La. for The Texas Co.

Merrill & Scott, Houston, Tex. (Frank L. Merrill, of Houston, Tex.), and John D., M. A., & Edwin N. Grace, of New Orleans, La., for Bozeman & Gray.

KENNERLY, Chief Judge.

On the morning of November 28, 1947, the Tug "Dispatch" was enroute eastward from Port Neches, Texas, pushing ahead of her three barges. The tug and barges were owned by the C. J. Dick Towing Company. The barges were the Bascomb W. Smith (in the lead), the Barge NBC 486 (in the middle), and the Barge Barrett J. Woods (the stern barge next to the tug). Such barges were loaded with gasoline belonging to The Texas Company and were destined for Mt. Vernon, Indiana.

While proceeding *easterly* through the Intracoastal Canal, such tow sighted and met the tug "Leo" pulling three empty oil barges, BA–22, BA–23, and BA–24. The Barge BA–23 was the stern barge. The tug "Leo" and her barges were owned by Butcher-Arthur, Inc., and were proceeding in a *westerly* direction through such Canal enroute from Baton Rouge, Louisiana, to Mermentau, Louisiana. As the two tows approached each other, a starboard to starboard passing was, by exchange of signals, agreed upon. In making such passing, there was a collision between the lead Barge Bascom W. Smith of the Dispatch's tow and the stern Barge BA–23 of the Leo's tow, causing the Barge Bascom W. Smith to explode and catch on fire and the Barge

Barrett J. Woods to catch on fire, both of which and their cargo were seriously damaged. The Barge BA–23 was also damaged, as was Derrick Barge 444 belonging to Bozeman & Gray, and perhaps other craft and property, etc., nearby.

Following such collision, the above four suits were filed in this Court, and have by agreement been tried together.

No. 808 is a suit by C. J. Dick Towing Company, owner of the Tug Dispatch and her tow of three Barges, for damages caused them by such collision, against the Tug Leo and her two of three Barges and their owner, Butcher-Arthur, Inc. After the filing of No. 810 hereinafter mentioned, the C. J. Dick Towing Company filed its claim therein with substantially the same allegations as are made here.

No. 810, in which Butcher-Arthur, Inc., while charging that the negligence of the Dispatch and her tow caused the collision and the resultant damages to the Dispatch and her tow and other craft and/or property, alleges that various persons are presenting claims against them and prays for exoneration from and limitation of liability, etc. under Admiralty Rule 51, et seq. (Section 181, et seq., Title 46, U.S. C.A.). Later the Commercial Petroleum Transport Company, a Delaware Corporation, successor of Butcher-Arthur, Inc., took the place of that Company in all this litigation.

As stated, the C. J. Dick Towing Company has filed herein its claim as set out in No. 808.

The Texas Company filed its claim herein, seeking to recover from the Tug Leo and her barges and their owner damages to its cargo contained in the barges comprising the tow of the Dispatch.

Likewise a claim was filed by Bozeman & Gray herein, as well as in No. 824.

No. 824 is a libel by Bozeman & Gray against the Tug Dispatch and her tow and their owner C. J. Dick Towing Company, for damages to Derrick Barge 444 owned by them, by reason of it being set on fire by the burning barges Bascom W. Smith and Barrett J. Woods drifting into her. Bozeman & Gray having been adjudged

bankrupts, their Trustee in Bankruptcy, Michael A. Holahan, and their Assignees, Edwin H. Grace and J. Y. Gilmore, have intervened.

Whatever claims Bozeman & Gray, and/or their Trustee and Assignees had, have been by agreement reduced to a small amount and paid by the C. J. Dick Towing Company and the Commercial Petroleum & Transport Company (successors of Butcher-Arthur, Inc.), each paying one-half without in any way acknowledging liability. There is an agreement between these two parties as to its final disposition and all parties have agreed that there need be no adjudication here of such matter.

No. 860 is a libel by The Texas Company, owner of the cargo of gasoline on the Barges Bascom W. Smith and Barrett J. Woods, against the Tug Dispatch and her tow and their owner, C. J. Dick Towing Company, for damages to such cargo of gasoline.

The C. J. Dick Towing Company, owner of the Tug Dispatch and her tow, by cross action in No. 860 sues the Texas Company for salvage of the cargo of the Barges Bascom W. Smith and NBC 486 and Barrett J. Woods.

John H. Francis, Trustee in No. 810 (the Limitation of Liability Proceedings) has intervened in No. 860, and also sues the Dispatch, her tow and their owners for damages.

There is about one-half bushel basket of Original, Amended, and Supplemental Pleadings, etc., but the foregoing is believed to be an accurate statement of the nature of the four suits. However that may be, no questions have been raised that the pleadings in the four cases are sufficient to support these Findings and Conclusions and the Judgment rendered thereon.

■ The facts are substantially as follows:—

(a) When the two tows agreed upon a starboard to starboard passing, it became the duty of the Leo and her tow to proceed along and as closely to the south bank of the canal as she could safely navigate. This duty I think and find she faithfully

and fully performed. With the three empty barges and the 15 or 20 mile per hour north wind, I am doubtful if it would have been possible for the Leo and her tow to be elsewhere in the Canal. When the collision occurred, the Leo and her tow were against such south bank, and the collision was not caused by any negligence of the Leo or her Barges or those in charge of them. I acquit them of negligence as charged against them in the pleadings in these cases and otherwise.

(b) I find that the Tug Dispatch and her tow and those in charge of them were negligent in the following particulars, which · negligence was the proximate cause of such collision:—

They failed to keep a good, proper and adequate lookout in approaching the Leo and her tow and in making the starboard to starboard passing agreed upon. Those whose duty it was to keep the lookout on the Tug and tow were not placed where they should have been placed, and were inattentive to and negligent in the performance of their duties. I think the collision might have been avoided had there been a lookout on the Barge Bascom W. Smith.

They failed to have the Tug and tow properly and adequately under control. The evidence shows that the starboard to starboard passing agreed upon was wise and not difficult for the Dispatch and her tow to have carried out. The loaded barges were not materially affected by the wind and tide, and with proper and careful navigation could have been kept on the north bank of the canal, certainly kept north of the center line of the canal, and most certainly kept from a collision with the Leo and her tow.

After they allowed the Tug Dispatch and her tow to sag across the canal in the direction of the Tug Leo and her tow, they were inattentive and negligent and for that reason did not discover the danger of a collision, or if they did discover same, they negligently failed to stop in time to avoid the collision. They negligently failed to blow the danger signal when danger of collision became apparent.

As hereinafter more fully discussed, it was the forward rake tank on the Barge Bascom W. Smith that exploded and started the fire. Such explosion was caused by some explosive substance which the Dispatch and her tow and those in charge negligently permitted to be in such rake tank.

(c) The record shows the following Stipulation:—

"The undersigned parties through their proctors of record, do hereby enter into this stipulation; the matters herein contained may be considered proven as testimony and in evidence herein without objection and shall be considered as a part of the record herein.

"1. That the cargo of high octane gasoline loaded on board barges, Bascom Smith, NBC 486 and Barrett J. Woods on or about November 28th, 1947, was owned by The Texas Company, a Delaware Corporation having been loaded at Port Neches, Texas for transportation in said barges by the tug Dispatch, owned and operated by C. J. Dick Towing Company. In the collision that occurred between the tug Dispatch and her tow consisting of said barges, Bascom Smith, NBC 486 and Barrett J. Woods and the tug Leo and her tow of barges, BA–22, BA–23 and BA–24 in Bayou Boeuf, Gulf Intracoastal Waterway near Morgan City, La. on or about November 28th, 1947, some of the said gasoline was lost, damaged and destroyed from the barges, Bascom Smith, NBC 486 and Barrett J. Woods. That said cargo had a monetary value and The Texas Company has not been paid for its loss and has accordingly suffered some damages.

"2. The cargo on barges Bascom Smith, NBC 486 and Barrett J. Woods towed by the tug Dispatch on or about November 28th, 1947, was being transported in accordance with letter agreement under date of March 17th, 1947, styled Transportation Agreement, 3/7/47 on Texas Company stationery, addressed to C. J. Dick Towing Company, Petroleum 'Bldg., Houston, Texas, signed by The Texas Company and accepted by C. J. Dick Towing Company, the original of which may be introduced upon the trial of the case without objection."

(d) The "Transportation Agreement" of March 17, 1947, between C. J. Dick Towing

Company and The Texas Company is in the Record and is referred to. Three paragraphs thereof are quoted here as follows:—

*"Jason Clause:*—In the event of accident, danger, damage or disaster before or after commencement of a voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, Dick is not responsible, by statute or contract, or otherwise, the shippers, consignees or owners of the cargo shall contribute with Dick in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred, in respect of the cargo. General average, if any, to be according to York-Antwerp Rules 1924, 'F'—Articles 1–15 and 17–22, inclusive, and on matters not therein provided for, according to rules and customs of the Port of New York.

*"Force Majeure:* The obligations of this Contract are mutually contingent upon Acts of God, perils of the waters, strikes, fire, explosion, perils of navigation, barratry of the Master or Crew, enemies, pirates, assailing thieves, arrests and restraint of or dissimilar, beyond the control of the princes, rulers and people, laws, rules, orders, regulations, restrictions and/or recommendations of any government or agency thereof whether Federal, State or local, and all other interferences, similar parties.

*"Release:* The transporting of the cargo under this contract is undertaken at the sole risk of the cargo carried, insofar as loss or damage to such cargo is concerned, and neither the Vessel, towboat, tugboat, barges or other equipment used or employed by Dick in the performance of their obligations hereunder, nor Dick, shall be liable for any loss of or damage to such cargo, unless due to negligence on the part of Dick and/or their servants in the handling, care and custody of the cargo and provided also that Dick shall have exercised due diligence to make such vessel, towboat, tugboat, barges and other equipment seaworthy and capable of performing the voyage they are to undertake."

(e) The evidence makes it clear and I find that the explosion on the Barge Bascom W. Smith immediately or soon after the collision was in the forward rake tank of the Smith. No cargo was being carried in such rake tank, and it was either not gas free or there was a leak of gasoline into it from the tank which contained gasoline cargo, or it contained some other explosive. The inspection of this rake tank both at the time the Barge Bascom W. Smith was loaded and at the beginning of the voyage at Port Neches and later at the time the tow or a part of it was aground was not at all adequate and meant practically nothing. I feel sure and find that the right kind of inspection at Port Neches of such rake tank would have disclosed that it was not gas free or that gasoline could leak or was leaking into it from the cargo tank or that it contained some other explosive. I think and find that those in charge of the Dispatch and her tow were negligent in not properly inspecting the tow and in allowing this rake tank to be in such condition as to be, as it was, a menace and hazard. It is clear and I find that the Dispatch and her tow were not seaworthy when they were loaded and left Port Neches at the beginning of the voyage, and continued unseaworthy up to the time of and after the collision. There is no diligence shown in making them seaworthy. They were negligently allowed to remain unseaworthy.

It is worthy of note that the explosion caused by the condition of such rake tank started the fire that caused the major portion of the damage to everyone concerned. Had it not been for the explosion and fire, the mere collision of the two barges would likely have caused little damage.

Further, I think the Dispatch and her tow or barges were unseaworthy in another respect or for another reason. Considering the manner the Captain and Crew inspected such rake tank at the beginning of the voyage and at and after the grounding, and the manner in which they handled the Tug and tow before and at the time of the collision, I seriously doubt their competency and efficiency. I find that their

competency and efficiency have not been satisfactorily shown.

(f) After the explosion and during the fire, there was for a period of time much confusion among those in charge of both tows. I do not discover any acts of negligence, either of omission or commission, on the part of the Dispatch and her tow and those in charge of her during this period. Nor do I discover that they rendered any unusual or extraordinary service beyond what they ought to have rendered.

1:—I conclude that neither Libellant C. J. Dick Towing Company, owner of the Tug Dispatch and her tow, nor The Texas Company, owner of her cargo, under the foregoing facts, is entitled to recover against either the Tug Leo or her barges, or their owner, Butcher-Arthur Company, or its successor, the Commercial Petroleum & Transport Company.

2:—I conclude that the Butcher-Arthur Company, or its successor, the Commercial Petroleum & Transport Company, under the foregoing facts, is entitled to recover against the Tug Dispatch and her tow and their owner, the C. J. Dick Towing Company, their damages caused by such collision, explosion, and fire.

3:—I conclude that Libellant C. J. Dick Towing Company, owner of the Tug Dispatch and her tow, under the foregoing facts, is not entitled to recover salvage against its cargo or The Texas Company, owner of such cargo, either for itself or for other persons.

I do not think that under the foregoing facts and under the Transportation Agreement between C. J. Dick Towing Company and The Texas Company, and under the Law, the question of salvage is presented.

4:—I conclude that The Texas Company is entitled to recover against the Tug Dispatch, her barges, and C. J. Dick Towing Company, her owner, for all damages to cargo caused by such collision, fire, explosion, etc. The foregoing facts and the wording of such Transportation Agreement make this clear.

While the C. J. Dick Towing Company was a private carrier, it will be observed that certain provisions of the Harter Act, 46 U.S.C.A. § 190 et seq., are written into the Transportation Agreement. The Framlington Court, 5 Cir., 69 F.2d 300, certiorari denied, United British S. S. Co. v. Newfoundland Export & Shipping Co., 292 U.S. 651, 54 S.Ct. 860, 78 L.Ed. 1500. See also May v. Hamburg-Amerikanische, etc. (The Isis), 290 U.S. 333, 54 S.Ct. 162, 78 L.Ed. 348, 1933 A.M.C. 1565; Warner Sugar Refining Co. v. Munson S. S. Line, 2 Cir., 23 F.2d 194; Spencer Kellogg & Sons v. Buckeye S. S. Co., 6 Cir., 70 F.2d 146; The Wildcroft, 201 U.S. 378, 26 S.Ct. 467, 50 L.Ed. 794; The Indien, D.C., 5 F.Supp. 349, 1933 A.M.C. 1342; Id., 9 Cir., 71 F.2d 752, 753, 1934 A.M.C. 1050; The Willdomino, 3 Cir., 300 F. 5, affirmed The Willdomino v. Citro Chemical Co., 272 U.S. 718, 47 S.Ct. 261, 71 L.Ed. 491; The Leerdam, 5 Cir., 17 F.2d 586. The Southwark, 191 U.S. 1, 24 S.Ct. 1, 48 L.Ed. 65.

5:—On the record as a whole, the Butcher-Arthur Company, and/or its successor, the Commercial Petroleum & Transport Company, is entitled to relief under Admiralty Rule 51, 28 U.S.C.A. and Section 181, Title 46, U.S.C.A.

Judgments will enter in accordance with these Findings and Conclusions. Let appropriate Decree or Decrees be drawn and presented.

### Supplemental Opinion.

Drafts of Decrees have today been presented in these cases, but there are differences between some of the parties which are necessary to be determined before they can be entered.

In Nos. 808 and 810, Judgment was rendered that Libellant C. J. Dick Towing Company take nothing, and Judgment was rendered in favor of Diesel Tug "Leo", et al., Respondents, against C. J. Dick Towing Company, Libellant. Respondents contend that *all* of the costs incurred in No. 810 (a suit by Butcher-Arthur, Inc., and its Assignee, for exoneration from or limitation of liability) should be taxed against C. J. Dick Towing Company. In the argument and in the briefs, Counsel discuss Admiralty Rule 7, The W. A. Sherman, 2 Cir., 167 F. 976, The Walter A. Luckenbach, 9 Cir., 14 F.2d 100, In re Stifinder,

460

2 Cir., 275 F. 271, and Martin Marine Transport Co. v. Jakobson, 2 Cir., 135 F.2d 325, and other cases.

I think the true rule is that a Claimant (such as C. J. Dick Towing Company) who loses either in a separate suit or by intervening in a suit for exoneration from or limitation of liability (such as No. 810) should be taxed with *only the costs that arise with respect to such claim.* I follow Martin Marine Transport Corp. v. Jacobson, supra. I see no reason to tax C. J. Dick Towing Company with premium incurred or paid by Butcher-Arthur, Inc. on Stipulation and Costs Bonds and Marshal and Clerk fees or Commissioner's fees in No. 810.

Let the Decree be prepared accordingly.