**AMERICAN TOBACCO CO. et al. v. THE KATINGO HADJIPATERA et al.**

United States District Court,
S. D. New York.

Sept. 30, 1953.

Bigham, Englar, Jones & Houston, New York City, for libelants and cargo claimants, John W. R. Zisgen, New York City, of counsel.

McNutt & Nash, New York City, for respondents and petitioners, James E. Freehill, New York City, of counsel.

Burlingham, Hupper & Kennedy, New York City, for Hellenic Lines, Limited et al., George F. Tinker, New York City, of counsel.

WEINFELD, District Judge.

The matter is before the Court on exceptions to the allowance and disallowance of various items of costs by the Clerk of the Court on the settlement of a proposed final decree.

The litigations which gave rise to the decree involved cargo owners, the ship, ship owners and the charterer. A consolidated trial was had of seven damage suits by cargo owners against the ship owners and charterer, petition for exoneration or limitation of liability, two cross libels by the owners seeking contribution in general average, respective

cross claims by the ship owners and the charterer against one another for indemnity should either be found liable.

The District Court held the owners were entitled to limit their liability as to all cargo claims and to exoneration as to seventeen of thirty cargo claimants.[1] Upon appeal it was held the owners were entitled to exoneration as to sixteen claimants.[2] The charterer was held primarily liable and the ship owners secondarily liable since the former was responsible for the storage of the cargo and it was "equitable that as between the charterer and the ship, the charterer should bear the loss."[3]

Under the interlocutory decree interest and costs to the respective parties were to be determined upon the settlement of the final decree. The proposed bills of costs were taxed by the Clerk of the Court and the claimants, the owners and charterer noted exceptions to the allowance or disallowance of specific items.

The principal controversy centers about the disallowance of $42,731.75, which the ship owners sought to tax, representing annual premiums and other expenses on the ad interim stipulation in the Limitation Proceeding. The item consisted of $27,331.75 paid for the premiums to the surety company on the stipulation and the further sum of $15,400 paid in England in British pounds for collateral to secure the stipulation, it being claimed that otherwise the surety refused to furnish the bond. The premiums were paid over a period of eleven years, the bond having been posted in the Limitation Proceeding in 1941 and cancelled upon the entry of the decree in 1952.

■ Disallowance of the premium was proper. Martin Marine Transp. Co., Inc., v. Jakobson & Peterson, Inc., 2 Cir.,

135 F.2d 325, 328. In language that admits of no dispute the Court of Appeals (L. Hand, Swan and Chase, JJ.) held that an owner who institutes a Limitation Proceeding pays "the 'expenses he has incurred for the purpose of availing himself of the act of Congress.' * * * [T]hese the petitioner must pay, whether or not the claimant contests his right to limit, and even though the petitioner wins when the claimant has done so." 135 F.2d at page 328. Further it held that neither Admiralty Rule 7, 28 U.S.C. nor the amendment of 1936 to § 185 of Title 46 U.S.C.A., required a different conclusion.

> "[T]he amendment circumscribed the privilege, but did not make it any less a privilege which the owner must pay for, if he is not content to rely upon limitation as a defense." 135 F.2d at page 329.

The Martin ruling, inferentially, at least, rejected the test laid down in the earlier Stifinder case[4] that taxation of the premium cost turned on whether or not there had been a contest with respect to the right to limit liability.[5]

The ship owners, acknowledging the broad sweep of the Martin case, seek to distinguish the instant case. They contend that because the ship here had been attached on numerous claims in excess of its value and her pending freight, they could not have secured limitation rights by way of answer and the filing of a limitation petition and a bond was a necessity, whereas in the Martin, there was but a single claim and the owner could have secured limitation rights by way of answer. However, the petitioners were not under compulsion to post the ad interim stipulation.[6] They had the alternative of transfer of the vessel to a trustee, of which they did not avail themselves.[7] Other distinctions are also

1. 81 F.Supp. 438.

2. 2 Cir., 194 F.2d 449.

3. 81 F.Supp. 438, 448.

4. The Stifinder, 2 Cir., 275 F. 271.

5. The owner cited the Stifinder case to uphold the allowance of the premiums by the District Court, but the Court of Appeals reversed. Record on Appeal, Brief of Appellee, p. 22.

6. 46 U.S.C.A. § 185.

7. Cf. Petition of Goulandris, 2 Cir., 140 F.2d 780.

urged to render the Martin case inapplicable, but I feel that it is controlling authority. Any change in the present rule, which also prevails in other circuits,[8] must come from authority other than the District Court.

This disposition makes it unnecessary to consider separately the claim for the payment made to secure the collateral.

 The next item under attack is the allocation of the petitioners' costs in the limitation proceeding for notes of trial, stenographer's fees, depositions, and other out-of-pocket disbursements. The Clerk taxed these 4/7ths against the unsuccessful cargo claimants and 3/7ths against the charterer Hellenic Lines, Ltd., and the latter excepts. At the time of the consolidated trial there remained twenty eight litigants—twenty seven cargo claimants and the charterer. Eleven of the cargo claimants succeeded; sixteen of them and the charterer failed. The Clerk reached the fractions noted above by using the total number of litigants as the denominator, and in the instance of the unsuccessful cargo claimants, their number as the numerator, yielding a fraction of 16/28ths or 4/7ths. The remaining 3/7ths was taxed against the charterer. I believe this disposition is fair and equitable. Since the ship owners did not succeed as to 11/28ths of the claims, the remaining claimants against whom the ship owners did prevail should be taxed only 17/28ths—the sixteen cargo claimants 16/28ths, and the charterer 1/28th. Ordinarily this would be the allocation of the costs,[9] but in this instance the decree provides that the ship owners are "entitled to recoupment from and indemnification by the Charterer together with costs." Under this circumstance the charterer who was found primarily liable should indemnify the ship owners with respect to the remaining 11/28ths.

The charterer objects to the allocation of costs on a numerical basis. It urges that since the damages asserted against the owners by the cargo claimants totalled $829,275 and the recovery by the successful claimants was but $29,820.63, the cargo claimants were unsuccessful to the extent of 96% and they should be taxed such amount and the charterer only 4%. I do not believe that the amount of a claim in a consolidated action should determine the allocation of the costs. If there had been no consolidation the costs taxed against an unsuccessful claimant would not be determined by the amount of his claim. Moreover, the charterer's position carried to its logical conclusion would require allocation against the cargo claimants based upon the ratio of the dollar amount of each claim to the aggregate dollar amount of all claims—a cumbersome process in contrast to the simple and generally accepted method of taxing costs based on the number of unsuccessful claimants over the total of all claimants.[10]

 The question of the allowance of interest remains. The libel was filed on March 7, 1941, but due to the war the action was necessarily delayed. The taking of depositions, particularly of witnesses in foreign countries, did not proceed until some time after the termination of the war. The action went to trial in April, 1948. Under the circumstances, I am of the view that the interest should commence on March 7, 1945 (anniversary date of filing of libel) and to continue until January 30, 1953, when the charterer made payment to the cargo claimants of a sum slightly in excess of the principal amount found due. In the exercise of discretion interest is

8. Boston Marine Ins. Co. v. Metropolitan Redwood Lumber Co., 9 Cir., 197 F. 703; The Walter A. Luckenbach (The Lyman Stewart), 9 Cir., 1926, 14 F.2d 100, A.M.C. 1281; D. of Oregon: The Ernest H. Meyer, 1930 A.M.C. 287; E. D. of Pa.: The Montrose, 1945 A.M.C. 454; S. D. of Texas: C. J. Dick Towing Co. v. D. T. Leo, D.C., 98 F.Supp. 455, 1951 A.M.C. 1539, affirmed 5 Cir., 202 F. 2d 850, 1953 A.M.C. 498, 508.

9. In re Cranford, 1931 A.M.C. 752; The Cleveland (The Delmar) D.C., 54 F. Supp. 819, affirmed, 2 Cir., 141 F.2d 1020, 1944 A.M.C. 366.

10. See footnote 9, supra.

allowed at the rate of 6% per annum for the period indicated.

Decree to be entered in conformity with the foregoing. Settle order on notice.