## ALABAMA TRANSIT COMPANY
### v.
### THE Tug PERCHERON, Her Engines, Furniture, Apparel, Etc., and Cornelius Kroll & Company.
### No. 2541.

United States District Court
E. D. Louisiana, New Orleans Division.
Nov. 14, 1956.

Jones, Walker, Waechter, Dreux & Poitevant, William B. Dreux, New Orleans, La., for libellant.

Terriberry, Young, Rault & Carroll, Edward S. Bagley, New Orleans, La., Chilton Bryan, Houston, Tex., for claimant.

CHRISTENBERRY, Chief Judge.

The above entitled cause having come on for hearing on the pleadings and proof of the respective parties, and having been argued by respective counsel, the Court being fully informed in the premises, after due deliberation makes the following findings of fact and conclusions of law:

### Findings of Fact

I.

At all times material hereto, Alabama Transit Company was a corporation organized and existing under the laws of

the State of Alabama, with its principal place of business in Birmingham, Alabama, and was the bareboat charterer and owner *pro hac vice* of the tug Richard Z.

## II.

At all times material hereto, Cornelius Kroll & Company was a partnership organized under the laws of the State of Texas, having its principal place of business at Houston, Texas, and was the owner of the tug Percheron.

## III.

The tug Richard Z is a steel diesel tug powered with a 320-horsepower engine, of 39 gross tons, 55 feet in length and 15 feet in width. On the night of November 14, 1953, the tug was pushing one steel tank barge, the AT–2, loaded with gasoline. The barge was 220 feet in length and 50 feet in width, with a V-shaped recess in the center of the stern wherein the bow of the Richard Z rested in order to push the barge. The tug and its tow were securely and rigidly secured to each other. J. L. Fikes was in charge of the navigation of the Richard Z.

## IV.

The tug Percheron is a steel diesel tug powered with a 700-horsepower engine, 146 gross tons, 81.1 feet in length and 24 feet in width. The engine is pilot house controlled. On the date mentioned, the tug was pushing an integrated tow consisting of two tank barges, the CKC–54 and CKC–53, both loaded with bunker "C" fuel. Both barges are 290.1 feet in length by 50 feet in width, so that the combined length of the tug and its tow was approximately 661 feet. The Percheron was being navigated at the time of the collision by Walter G. Keith.

## V.

At about 6:00 P.M. on the evening of November 14, 1953, the Richard Z and its tow passed the Percheron and its tow at about Mile Post 59 in the Gulf Intracoastal Waterway west of Harvey, Louisiana. Both vessels were eastbound and were showing proper lights.

## VI.

Thereafter both vessels encountered thick intermittent fog and smoke patches caused by nearby marsh fires. On several occasions, the tug Percheron was forced to reduce its speed because of the limited visibility and the pilot was considering the possibility of tying up to a bank until the fog cleared.

## VII.

After the Richard Z passed the Percheron, the two boats were in radio communication, the Richard Z relaying back to the Percheron information as to fog conditions and the position of other boats in the Canal. Although the Master of the Percheron admits that less than an hour before the collision he had been in radio contact with the Richard Z, there is a conflict in the testimony as to whether or not, some five or ten minutes before the collision, the Richard Z radioed back to the Percheron that she was stopped dead in heavy fog just past Mile Post 45. But after weighing the testimony, this Court finds that the Master of the Richard Z did, in fact, inform the Percheron that she was stopped ahead in the fog and attempting to tie up along the bank.

## VIII.

At about 9:40 P.M. the Richard Z entered the thick fog bank at Mile Post 45. The Master immediately stopped the vessel and experienced difficulty in seeing the nearby bank and finding a tree to which he could tie up. The bow of the tow was then about 25 feet from the north or port bank of the Waterway and the stern of the tug was about 75 feet from the same bank. Proper signals were being blown by the Richard Z.

## IX.

At about 9:45 P.M. the Master of the Percheron communicated again by radio with the Master of the Richard Z, and asked what bank the Richard Z was on, at which time he was informed that the Master of the Richard Z was unable to distinguish the bank because of the dense fog, but that the tug was about three barge lengths east of Mile Post 45.

### X.

The Percheron, however, continued in its course toward Mile Post 45 at a speed of about 1½ to 1¾ miles per hour.

### XI.

At about 9:55 P.M. the lead barge of the Percheron tow moved into the fog bank in which the Richard Z was trapped, and the Percheron's whistle blew a fog signal and then a four-blast whistle danger signal.

### XII.

A crew member of the Richard Z sighted the Percheron's lead barge bearing down upon it when the vessels were separated by a distance of only 30 feet. The crewman so informed the Master who, in disbelief of the Percheron's presence, neglected for a few seconds to turn around and see the barge approaching, but when he did blew a four-blast whistle danger signal and put the engines of the Richard Z full ahead.

### XIII.

Almost immediately thereafter, as the Percheron continued into the fog bank, its lead barge was in collision with the stern of the tug Richard Z, causing the Richard Z to sink and sustain severe damages. The collision caused the lead barge of the Percheron to sheer to the right.

### XIV.

After the collision the Percheron and its tow continued forward a distance of approximately 435 feet before coming to a stop, or more than one-half the forward vision of the Percheron.

### XV.

At the time of the collision, and while the Percheron had been going through the intermittent fog and smoke patches, there was no lookout at the head of its tow.

### Conclusions of Law

### I.

This Court has jurisdiction over the subject matter of this action, and venue is properly laid in the Eastern District of Louisiana. 28 U.S.Code, § 1333.

### II.

The tug Percheron was negligent in proceeding at an excessive rate of speed in a fog, in violation of the well-established principle of law in maritime navigation that a vessel cannot proceed in a fog at a speed at which she cannot be stopped dead in the water within one-half of the visibility before her. Pilot Rules for Inland Waters, Article 16, 33 U.S.C.A. § 192; The Umbria, 1897, 166 U.S. 404, 417, 17 S.Ct. 610, 41 L.Ed. 1053; Silver Lines, Ltd., v. U. S., 9 Cir., 1937, 94 F.2d 754, 1937 A.M.C. 1427; Eymard v. The Bonnie Ruth, D.C.E.D. La.1954, 120 F.Supp. 67, 1954 A.M.C. 1186.

### III.

The tug Percheron was negligent in failing to station a lookout at the bow of its 580-feet tow which she was pushing ahead in a fog that limited visibility to practically zero. A lookout on the bow might have warned the pilot of the presence of the Richard Z in the waterway sometime before the pilot himself discovered it by either hearing the Richard Z's fog signals or actually seeing the Richard Z itself dead ahead in the waterway. Moreover, such a lookout would have been in a position to have seen the dense fog ahead of the Percheron sooner than the pilot in fact saw it and thus give timely warning so that the Percheron might have reduced the speed sufficiently to have avoided the collision. The necessity of a lookout at the head of a tow has clearly been established by the Courts, and this need is even greater when a tow is proceeding in a dense fog and knows the presence of another tow somewhere ahead. Pilot Rules for Inland Waters, Article 29, 33 U.S.C.A. § 221; Gulf Oil Company v. The Socony No. 16, 2 Cir., 1947, 162 F.2d 869, 1947 A.M.C. 1031; Pure Oil Co. v. The Pennsylvania, D.C.W.D.Ky.1955, 124 F.Supp. 121, 1955 A.M.C. 1116; C. J. Dick Towing Co. v. The Leo, D.C.S.D.Tex.1951, 98 F.Supp. 455, 1951 A.M.C. 1539.

### IV.

The tug Percheron as the overtaking vessel was the burdened vessel, and, therefore, bore the burden of proving that she was free of any fault in the collision, which burden of proof she was unable to sustain. Pilot Rules for Inland Waters, Article 25, 33 U.S.C.A. § 210; The Great Republic, 1874, 23 Wall. 20, 90 U.S. 20, 23 L.Ed. 55; Harris v. Sabine Transportation Co. Inc., 5 Cir., 1953, 202 F.2d 537, 1953 A.M.C. 489.

### V.

Any fault on the part of the Richard Z was of such a minor nature that it would be completely outweighed by the negligence on the part of the Percheron. The Great Republic, supra.

### VI.

Under the circumstances, the tug Percheron was solely at fault, and those faults caused the collision and resulting damage to the tug Richard Z. The libellant is entitled to a decree for its damages, with interest from the date of the collision, and costs.