## THE CHESTER VALLEY.

### TEXAS STAR FLOUR MILLS v. LYKES BROS.–RIPLEY S. S. CO., Inc.

### No. 261.

District Court, E. D. Louisiana.

July 17, 1939.

Deutsch & Kerrigan, of New Orleans, La. (David Gertler, of New Orleans, La., of counsel), for libelant.

Terriberry, Young, Rault & Carroll, of New Orleans, La. (Benjamin W. Yancey, of New Orleans, La., of counsel) for respondent.

BORAH, District Judge.

This is a suit in admiralty to recover damages for injury to a shipment of flour on respondent's steamship Chester Valley from Galveston, Texas, to Rotterdam, Holland. The flour, receipt of which "in apparent good order and condition * * * (quality * * * contents * * * unknown) "was recited in the bill of lading, was delivered in Rotterdam damaged by taint. The libel alleges that the Chester Valley was a common carrier, that the merchandise was shipped thereon in good order and condition to be carried to the port of Rotterdam, Holland, but that upon delivery at Rotterdam the merchandise was not in the same good order and condition as when shipped, but on the contrary was seriously damaged and impaired in value by taint and other foreign substances. The respondent pleads as a defense an exception in the bill of lading from liability for damage by "taint", and that the damage was not due to any failure on its part to exercise proper care in the custody, stowage, and handling of the merchandise, and that nothing which its agents, servants, employes, or vice principals did or in any way failed to do caused or contributed to the loss and/or damage. This in brief presents the issues, and in compliance with Admiralty Rule 46½ the Court makes the following

### Findings of Fact

I. The libelant is a corporation organized under and by virtue of the laws of the State of Texas.

II. The steamship Chester Valley and Lykes Bros.-Ripley Steamship Co., Inc. (now Lykes Bros. Steamship Co., Inc.), are and were at all times mentioned in the libel common carriers of merchandise for hire between Galveston, Texas, and Rotterdam, Holland, and the said Lykes Bros.-Ripley

Steamship Co., Inc., are and were at all times mentioned in the libel owners of the steamship Chester Valley.

III. On January 15, 1936, the libelant delivered to Lykes Bros.-Ripley Steamship Co., Inc., and the steamship Chester Valley 1,000 bags of wheat flour at 50 kilos or 110 pounds each, marked "Star's Best", to be carried on the steamship Chester Valley from Galveston, Texas, to Rotterdam, Holland.

IV. Lykes Bros.-Ripley Steamship Co., Inc., and the steamship Chester Valley, upon the loading of libelant's flour, issued to libelant a bill of lading which recited receipt of the flour by the carrier in "apparent good order and condition * * * (quality * * * contents * * * unknown)" and also contained the following provision: "Neither the vessel, her owner, nor agent shall be liable for loss or damage resulting from: * * * Inherent vice, nature, defect * * * of the goods; * * * smell, taint, or evaporation from any other goods; * * *"

V. Libelant's flour was stowed in the No. 1 'tween deck of the steamship Chester Valley along with cotton and with fifteen tierces of beef casings. The beef casings were stowed next to or near the flour. Because of the tendency of beef casings to sweat, it was negligence in the stowage of the flour to stow the flour next to or near the beef casings.

VI. The steamship Chester Valley sailed from Galveston on January 20, 1936, and proceeded on her voyage to LeHavre, France, where the beef casings were discharged, and later to Rotterdam, Holland, arriving at that port on February 22, 1936. The passage was a stormy North Atlantic voyage, but the weather was not unusual for such a voyage at that time of year.

VII. On the voyage the cargo holds, including the No. 1 'tween deck, were ventilated as weather permitted. The holds were not ventilated on January 27, 28, 29, 30, 31, February 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 18, 1936. On these days conditions of rain, wind and seas precluded ventilation of the holds, and under the circumstances it was proper for the master and officers of the vessel not to ventilate the holds.

VIII. The bags of flour were delivered to Hatenboer and Verhoeff, the consignees, in the same external condition in which they had been shipped by libelant. There was no external sign of damage on any of the bags. Upon examination of the flour the consignees discovered that the flour was defective and had an odor deviating from normal. The firm of cargo surveyors, M. H. C. Van Andel, was called in to represent all interests, the ship, the receiver, and the cargo underwriter. The cargo surveyor rendered an opinion that the flour was defective because of inherent vice in the flour itself and was not due to any faulty stowage.

IX. Samples of the flour were submitted to the Station for Millers and Bakers, a Dutch Government experimental laboratory, and upon analysis the odor of the flour was found to be caused by too many bacteria, an excess of bacterial activity. Flour is never wholly sterile, never wholly free from a certain degree of bacterial activity.

X. There was no cargo stowed in the No. 1 'tween deck which would have transmitted bacteria to the flour; the beef casings were sound and packed in brine; there was no proof of any transmission of bacteria to the flour from any other cargo in the No. 1 'tween deck. No bacterial test was had on the flour before shipment, and libelant has been unable to say the extent of the bacterial activity in the flour at the time of shipment.

### Conclusions of Law

I. The damage having been brought within the clause of the bill of lading exempting the vessel from liability for "taint" the burden was on the shipper to show that there was a causal connection between the condition of the flour on discharge and the improper stowage, and having failed to make such a showing the respondent must prevail.

II. The bill of lading having receipted for the goods "in apparent good order and condition * * * (quality * * contents and value unknown)," the libelant must show by a fair preponderance of the evidence that the flour was in actual internal and chemical good condition when delivered to the carrier. This burden was not sustained and libelant accordingly must fail in its effort to recover damages against the carrier. Niel Maersk, 2 Cir., 91 F.2d 932, 1937 A. M. C. 975.

Let a decree be entered dismissing the libel with costs.