AMERICAN TOBACCO CO. et al. v. THE
KATINGO HADJIPATERA et al.

No. 152, Docket 21874.

United States Court of Appeals
Second Circuit.

Argued Feb. 7, 1951.

Decided Sept. 13, 1951.

Rehearing Denied Feb. 20, 1952.

Bigham, Englar, Jones & Houston, New York City (Henry N. Longley and John W. R. Zisgen, New York City, advocates), for libellants.

Nash, Ten Eyck, Maximov & Freehill, New York City (James E. Freehill and Andre Maximov, New York City, advocates), for petitioners.

Burlingham, Veeder, Clark & Hupper, New York City (Ray Rood Allen, Burton H. White, George F. Tinker and Roscoe H. Hupper, New York City, advocates), for respondent.

Before SWAN, FRANK and LEARNED HAND, Circuit Judges.

FRANK, Circuit Judge.

1. Other than as noted below, the facts are sufficiently stated in the opinion of the able trial judge, reported in D.C., 81 F. Supp. 438. Except as to matters discussed in the succeeding paragraphs, we think the evidence amply supports his findings, and that those findings justify his legal conclusions.

2. As to cargo proved to have been delivered to the ship in apparent good condition and out-turned damaged other than by the fire,[1] the shipowners and the Charterer had the burden of proving that the loss was not due to their negligence.[2] But different considerations govern concerning the goods damaged by the fire. No liability could be imposed unless the owners of those goods carried the burden of proving that the fire was caused by the shipowner's design or negligence[3] or the carriers' actual fault or privity.[4] Hoskyn & Co. v. Silver Line, 2 Cir., 143 F.2d 462. The trial judge, on the evidence, correctly held that this burden had not been carried with respect to the shipowners.

However, he held that it had been with respect to the Charterer. He found—on evidence which we think sustains his finding—that, with the exception of the added 139 bales of tobacco in No. 3 tweendeck—

the stowage of this part of the cargo was proper. But he found that these 139 bales had been negligently stowed in that they blocked ventilation in No. 3 hold, and that without this negligence the fire would not have happened. This finding implies —and we do not understand Cargo to dispute it— that before the addition of these bales the ventilation was proper.

In reaching this finding, the trial judge seems to have been persuaded, at least in part, by his subsidiary finding that the ship's master had objected, on the ground of overloading, to taking on the additional 1552 bales of tobacco, which included the 139 stowed in No. 3 tweendeck. The trial judge was mistaken. The master's testimony makes it clear that his protest related not at all to overloading but solely to the extra expense that would be entailed in shifting the cargo on out-turn, and that he withdrew his protest when the Charterer declared in writing that this expense would be for its account.

It is true that the Charterer's managing director testified that, before the 1552 bales were taken on, the ship had all the cargo "she could properly carry." Since, however, he did not come on board to inspect or direct the distribution of the added cargo, there is no evidence that he knew the precise manner of stowing the 139 bales in No. 3 tweendeck. However, we shall assume, arguendo, that in the circumstances the Charterer became responsible for any fault in their stowage.

On that assumption, since the trial judge held that the fault consisted of blocking potential ventilation of the cargo in No. 3 hold through an opening in the stow in No. 3 tweendeck, the crucial question is this: Is there substantial evidence that the 139 bales were so stowed as to impede the presumably adequate ventilation existing theretofore? We think not. The 139 bales were but a small fraction of the total cargo stowed in No. 3 tweendeck.[5] There

1. When we refer to the fire, we include its consequences.

2. 46 U.S.C.A. § 1304(2) (q). See, e.g., American Trading Co. v. The Harry Culbreath, 2 Cir., 187 F.2d 310.

3. 46 U.S.C.A. § 182.

4. 46 U.S.C.A. § 1304(2) (b).

5. Approximately 5½% of a total of 2,534 bales, judging by the exhibits which show the stowage on out-turn.

is no evidence to show precisely how the cargo in No. 3 tweendeck was stowed [6] or, particularly, where the 139 bales in No. 3 tweendeck were placed when the loading was completed on November 2, 1940. It does appear,[7] however, that the additional 139 bales were stowed "on top of" another parcel of tobacco. The trial judge found that there had been no negligence in the stowage in No. 3 tweendeck and No. 3 hold, before the 139 bales were added; this seems to imply that it was not necessary, for adequate ventilation and inspection of the cargo in No. 3 hold, to leave a vertical shaft, in the way of the weather deck hatch, down to No. 3 hold. In any event, the 139 bales, if superimposed on other cargo already properly stowed, could not have sealed off such a shaft. Cargo appears to suggest that the 139 bales were so stowed that, in some other way, they impeded ventilation in No. 3 hold; but with no substantial evidence to show exactly where they were stowed,[8] we see no justification for making such an inference in Cargo's favor.

■ We accept, as we must, those of the trial judge's inferences of fact which he drew directly from his estimates of the credibility of witnesses whom he observed as they testified in his presence—i. e., his inferences (sometimes called "testimonial inferences") that certain facts existed because he believed some witness or witnesses who testified before him that those facts did exit.[9] We are not required, however, to accept a trial judge's findings, based not on facts to which a witness testified orally, but only on secondary or derivative inferences from the facts which the trial judge directly inferred from such testimony. We may disregard such a finding of facts thus derivatively inferred, if other rational derivative inferences are open.[10] And we must disregard such a finding when the derivative inference either is not rational or has but a flimsy foundation in the testimony.

■ Here, then, we are obliged to reject the finding that the stowage of the additional 139 bales in No. 3 tweendeck so impeded ventilation of No. 3 hold as to cause the fire damage to cargo stowed there. For, at best, that finding rests, not on any direct testimony (i. e., "testimonial inferences"), but on a pure conjecture, derived indirectly from the testimony. So fragile a support for a trial judge's finding will not suffice.

Since the trial judge correctly found on the evidence that there was no fault in the stowage or care and custody of this tobacco previous to the fire, we conclude that, all else aside,[11] the trial judge correctly rejected the contention that exculpation must be denied as to that portion of that tobacco which may have been—or was not proved not to have been—in whole or part damaged (through heat in the course of the voyage or otherwise) before the fire broke out.

It follows that neither the Charterer, the vessel nor her owners are liable to the cargo-owners for the damage to the tobacco stowed in No. 3 hold and No. 3 tweendeck.

■ 3. Some cases of sultanas stowed in the lowest cross-bunker were out-turned broken and with partial loss of contents; some cases of tinned olive oil stowed in this cross-bunker and some in the poop were out-turned dripping oil; some drums of olive oil stowed in the lowest cross-bunker were out-turned in damaged con-

6. Among the exhibits are plans showing what was stowed in the various holds. But the plans were made on out-turn after much of the cargo in No. 3 tweendeck had been shifted to fight the fires in No. 3 hold during the voyage. They do not show how and where the cargo in No. 3 tweendeck was originally stowed.

7. From a letter, dated November 4, 1940, from the Charterer to the master, regarding eventual shifting expenses.

8. See note, 6, supra.

9. This we must do, since most of the pivotal testimony was given in the presence of the judge who observed, as we cannot, the witnesses' demeanor. This is not a case, like Gindorff v. Prince, 2 Cir., 189 F.2d 897, where the oral testimony, believed by the trial judge, is on its face hopelessly incredible.

10. E. F. Drew & Co. v. Reinhard, 2 Cir., 170 F.2d 679, 684.

11. See Consumers Import Co. v. Kawasaki Kisen Kabushiki Kaisha, (The Venice Maru), 2 Cir., 133 F.2d 781, affirmed 320 U.S. 249, 64 S.Ct. 15, 88 L.Ed. 30.

dition. It is asserted and not denied that, as to these shipments, the bills of lading and the mate's receipts acknowledged receipt in apparent good order. The decree erred in not allowing recovery for these items.[12] The shipowner and Charterer had the burden of proving that these losses were not due to their negligence. They did not carry this burden. There was nothing to show that these losses resulted in whole or part from the fire or from the length of the voyage or the heat encountered during the voyage. They may have been caused by negligence in unloading after the voyage had ended.[13] The Charterer is primarily liable for these losses, and the ship (subject to the limitation) secondarily liable.[14]

4. All the cargo was correctly held liable to contribute in general average to the ship for the ship's damage and expense occasioned by the fire. Cargo contends that, under the doctrine of The Toluma, 294 U.S. 394, 55 S.Ct. 467, 79 L.Ed. 942, the Charterer should be liable to cargo, as on an action over, for these contributions. But assuming, *arguendo*, that The Toluma doctrine is otherwise applicable, it cannot be applied here. For cargo has not proved any fault of Charterer causally related to the fire.

Modified; affirmed as modified.

---

12. The disallowed claim of Moosalina Products Co. for its shipment of olive oil cannot be considered, since that shipper made no assignment of error with respect thereto.

13. See American Trading Co. v. The Harry Culbreath, 2 Cir., 187 F.2d 310, 313.

14. Pioneer Import Corp. v. The Lafcomo, 2 Cir., 138 F.2d 907, 908.