**FLOTA MERCANTE DEL ESTADO v.
ORIENT INS. CO.**

**THE RIO PRIMERO.**
No. 13933.

United States Court of Appeals
Fifth Circuit.
July 31, 1952.

Leon Sarpy, New Orleans, La., for appellant.

Malcolm W. Monroe, Eberhardt P. Deutsch, New Orleans, La., for appellee.

Before HUTCHESON, Chief Judge, and RUSSELL and STRUM, Circuit Judges.

RUSSELL, Circuit Judge.

This suit in admiralty, instituted by Orient Insurance Company, as subrogee of Sidney Ross Company, Inc., against Flota Mercante del Estado, a department of the Government of the Republic of Argentina, as owner and operator of the Steamship Rio Primero, involves a claim of damages to a shipment of acetyl salicylic acid, hereinafter referred to by its common appellation, aspirin. Other merchandise included in the shipment is not involved in this litigation.

The evidence, submitted entirely in the form of depositions and exhibits, disclosed that the aspirin, packed in thick paper bags which were enclosed in wooden barrels, was delivered to Flota Mercante del Estado at the Port of New Orleans on or about February 24, 1943, consigned to the order of Cia Argentina Sidney Ross, Inc., S. A., Buenos Aires, Argentina. The cargo was accepted by Flota Mercante del Estado for shipment aboard the Rio Primero, for which it issued its bill of lading acknowledging that the "goods or packages said to contain goods hereinafter mentioned [were] in apparent good order and condition." Prior to the acceptance of the shipment at New Orleans, it was necessary for 29 of the barrels to be recoopered. The shipper, Sidney Ross Company, Inc., executed a letter of guaranty in which it agreed to hold the carrier harmless as to any loss or damage with respect to these specific barrels.

The vessel arrived at the Port of Buenos Aires on April 4, 1943. The shipment in question was landed and received into the local customs warehouse on dates from April 6 to 16, 1943. On April 7, 1943, the consignee requested that the firm of F. B. O'Grady & Company, Buenos Aires, Argentina, make a "survey and report upon alleged loss of contents and/or damage" to a part of the shipment. Pursuant to this request a survey was made on April 8th, and 16th, 1943, at the customs warehouse, and on May 8th, 1943, at the consignee's warehouse, where the merchandise was received on May 3rd, 1943. The carrier was notified of the loss by letter dated April 20, 1943, but, in a letter dated April 30, 1943, replied denying liability.

The "Certificate of Survey" submitted by F. B. O'Grady & Company disclosed that 15 barrels of aspirin, out of a total of 198 contained in the shipment, were broken with a loss of contents, and the aspirin which remained in 12 of these barrels "were damaged and/or wetted." The shortage was attributed, in the opinion of the surveyor, to loss through breakages in the barrels and the water damage attributed to "contact with water which entered into the barrels somewhere in transit." Neville Challoner, who testified by deposition, identified the "Certificate of survey" as being authentic and ratified its contents. He testified that he acted as inspector for the firm of F. B. O'Grady & Company in reference to the aspirin and that "in the deposits of the Customs House the barrels left signs of dampness on the ground."

There was testimony explaining that the term "in transit", as used in the Certificate, referred to the period expiring from the time the shipment left the deposits of the exporter until it arrived at the deposits of the consignee. Also, that the barrels used by Sidney Ross Company, Inc., were of good quality, although some of them had been recoopered. The damaged product could not be used in the condition in which it was received; however, it was reprocessed at a cost of $4,878.75, Argentina paper. During the course of the reprocessing, there was an additional loss of quantity. Only two of the barrels covered by the letter of guaranty issued by Sidney Ross Company, Inc., were damaged. These sustained a loss of contents, but no water damage.

Based upon a finding that the merchandise was received by the carrier in apparent good order and condition and delivered by it to the consignee in a damaged condition, the trial Court awarded judgment to appellee.[1] Appellant prosecutes this appeal from that judgment, contending that the evidence, as a matter of law and fact, fails to support it because: (1) there is no evidence that the aspirin was in actual good order and condition when received by the carrier; (2) there is no proof of loss at the point of delivery by the carrier; and (3) the evidence does not obviate the possibility that the goods were damaged before they were received, or after they were delivered, by the carrier.

In support of its contention that appellee must prove the actual good order of the aspirin at the time the shipment was received by the carrier, as distinguished from its apparent good order and condition acknowledged by the bill of lading, appellant relies principally upon The Chester Valley, 5 Cir., 110 F.2d 592, and The Niel Maersk, 2 Cir., 91 F.2d 932. In The Chester Valley, supra, the goods were accepted by the carrier as being in apparent good order and condition and were delivered to the consignee in the same external condition in which they had been shipped D.C., 28 F.Supp. 290. In defense of the action to recover for damage to the goods, the carrier relied upon an exception in its bill of lading which absolved it from liability for loss or damage resulting from inherent vice, nature, defect of the goods, smell, taint, or evaporation from any other goods. It established by its evidence that the damage resulted from a cause within this exemption. Under these facts, this Court held that in the absence of proof that the goods were in actual good order when received by the carrier, there could be no recovery.

In The Niel Maersk, supra, the carrier, in defense of an action to recover for loss or damage to a shipment of fish meal which was received by it in apparent good order, relied upon the failure of the libelants to prove the actual condition of the merchandise at the time of the shipment and also upon certain exceptions in the bills of lading which included inherent vice. The Court, observing that the tendency of fish meal to deteriorate depends on whether it contains an excess of moisture or oil held that in the absence of competent proof as to the moisture and oil content of the fish meal the libelants must fail in their efforts to recover damages against the carrier. Cf. The Nichiyo Maru, 4 Cir., 89 F.2d 539.

In the present case there is no evidence as to inherent vice, or as to the nature of the particular shipment of aspirin, or of

1. Reported 102 F.Supp. 729.

aspirin generally. The carrier made no attempt to prove that the goods were subject to spontaneous deterioration under any circumstances. Moreover, it was shown by the evidence that the loss of contents was due to the breakage of the barrels and that the water damage was due to water which entered the broken barrels. It is clear that these barrels were not broken when accepted by the carrier for shipment. As this Court stated in Reider v. Thompson, 5 Cir., 197 F.2d 158, 161, "when packages are received by the carrier in acknowledged good external condition but are delivered by the carrier in a damaged or stained condition which could reasonably and logically be found to indicate that the discovered damage or deterioration of the contents resulted from the cause indicated by the condition of the external package, theretofore received in good condition, the trier of facts may infer from these circumstances that damage to the contents was occasioned by the negligence of the carrier in the respect indicated by the changed external condition of the package." See American Tobacco Co. v. The Katingo Hadjipatera, 2 Cir., 194 F.2d 449, 451.

■ Nor can appellant find comfort in the fact that it was necessary for certain of the barrels to be recoopered before they were accepted for shipment. This indicates that the consignment was critically scrutinized prior to acceptance and the barrels which had apparent defects were noted and repaired, indicating that the remaining barrels were in apparent good condition. The bill of lading with no exceptions acknowledged that the barrels were in apparent good order. Certainly if 15 of them were broken and if when these were moved they left wet places on the ground, an exception would have been made in the bill of lading.

The two remaining points raised by appellant are not established. Acknowledged receipt of the barrels in good order disposes of the contention that the damage may have been sustained prior to the receipt of the shipment at New Orleans. If the barrels had been broken and wet at that time they would not have been in apparent good order and condition. As to proof that the dam-

aged condition existed at the time of delivery into the customs warehouse, the evidence shows that a survey was requested on April 7th, 1943, one day after the unloading was begun. The unloading was completed on April 16th, 1943, and on April 8th and 16th, the shipment was inspected at the customs warehouse. On April 20th, the carrier was given notice of the loss. In the customs warehouse they left signs of dampness on the ground. Thus, it is clear that the aspirin was delivered in a damaged condition, as found by the trial Court.

Judgment affirmed.