RHODE ISLAND INSURANCE CO., Plaintiff and Appellee, *v.* POPE & TALBOT LINES and PACIFIC ARGENTINE BRAZIL LINE, INC., Defendants and Appellants.

No. 11412. Argued March 1, 1955.—Decided June 29, 1955.

---

434

*Brown, Newson & Córdova* for appellants. *F. Prieto Azúar* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

This is an action for damages filed by Rhode Island Insurance Company against Pope & Talbot Lines and Pacific Argentine Brazil Line., claiming the sum of $3,797.20 plus costs, legal interest, and attorney's fees. It is alleged, briefly, that A. de Cardi, Inc. purchased a cargo of canned pears for $45,243.82, which was consigned to San Juan from the port of Portland, Oregon, on December 23, 1948, aboard a ship owned and operated by defendants; that while on board the ships of the defendants the goods suffered damages amounting to $3,797.20; that such damages were due exclusively to the negligence of defendant's employees in the course of their employment; that those damages were covered by an insurance policy issued by plaintiff in favor of A. de Cardi, Inc.; and that for that reason plaintiff paid to the latter the sum of $3,797.20, thereby being subrogated to all its rights and actions against the defendants for the damages to the merchandise up to that sum.

In their answer, the defendants admitted that the goods were shipped as alleged in the complaint and that they were partially damaged when they reached San Juan, but denied the other essential facts. Moreover, defendant Pacific Argentine Brazil Line, Inc. alleged affirmatively: (1) that plaintiff's action had prescribed; (2) that the damages to the goods did not arise from its negligence; and (3) that it was relieved of all liability under the "Carriage of Goods by Sea Act," 46 U.S.C.A., § 1300 *et seq.*, approved by Congress on April 16, 1936, because:

"(*a*) The damages to the goods arose from inherent defects and vices of the goods themselves. 46 U.S.C.A., § 1304(2)(m).

"(*b*) The damages to the goods were due to causes arising without the fault or neglect of the defendant or its agents or employees. 46 U.S.C.A., § 1304(2)(q).

"(c) The damages to the goods arose from perils, dangers, and accidents of the sea, and not from any act of neglect of the defendant, its agents or employees which in anywise could have contributed to the damages. 46 U.S.C.A., § 1304(2)(c)."

After hearing the case on the merits, the lower court rendered judgment and opinion, making the following findings of fact:[1]

"1.—A. de Cardi, Inc., late in 1948 ordered and purchased from Washington Canners Co-operative of Vancouver, Washington, a cargo of 'Thurber' canned pears worth $45,243.82, which the vendor and consignor loaded on December 23, 1948, on the P. & T. Trader ship at the port of Portland, bound for San Juan, Puerto Rico.

"2.—Defendant Pacific Argentine Brazil Line, Inc., a California corporation engaged in the business of maritime public carrier, was the owner and operator of the P. & T. Trader ship in which the goods in question were transported. Co-defendant Pope & Talbot Lines is a domestic corporation, and acts as the Puerto Rico agent of Pope & Talbot Lines, Inc., also a California corporation, which in turn is the agent and managing operator of Pacific Argentine Brazil Line, Inc. Pope & Talbot Lines also paid the stevedores working as its own employees in unloading the ship in question.

"3.—According to the bill of lading, there arrived in San Juan 4,775 cases of canned pears consigned to the San Juan office, 625 cases consigned to Mayagüez, and 600 cases to Ponce. The pears consigned to Ponce and Mayagüez, which arrived in the same ship for purchaser A. de Cardi, Inc., were delivered in perfect condition.

"4.—Of the cargo consigned to the consignee's San Juan office, 446 cases of 'Thurber' pears were 'completely useless' upon arrival.

"5.—Plaintiff's surveyor, Benjamín Acosta, who inspected the goods upon arrival in San Juan, estimated the loss at

---

[1] It is well to point out that the case was heard on the merits in the Superior Court before Judge Pedro Pérez Pimentel, who took no action thereon by reason of his appointment shortly afterwards as Justice of this Court. The parties agreed to submit the case on the transcript of the evidence, on which Judge Ángel M. Umpierre of the Superior Court rested his decision.

$3,742.13, based on an appraisal of the damages, the bill of lading, and the shippers' invoice.

"6.—While the goods were still pending delivery in the hold, ·there was a large flat pack with a number of cases marked by a greasy black planking which was low and had made a depression.' A great many cans of pears 'were dented by the force of pressure; flattened; not merely swollen or expanded, but twisted.' On the pier there were cans of pears of the same kind 'smashed and scattered all over.' The case containing the cans was made of ordinary pasteboard.

"7.—On one of the packs of cases of canned pears there were two lines, two indentations, which were quite deep, 'as if some heavy object had been .dropped on the cases'.

"8.—When the cargo of pears was stowed aboard the P. & T. Trader ship in Portland, Oregon, they were 'evidently in good order and condition.'

"9.—We are not convinced by defendants' expert testimony that the damage to the cans of pears was caused by sweating as a result of changes in temperature while in transit. It cannot be inferred that only 446 out of a total of 6,000 cases of canned pears suffered the effects of a change in temperature.

"10.—The evidence has shown that the cans were crushed and flattened, as if some heavy object had been placed on them. The cans received blows and those blows produced indentations. Goods in transit may be damaged as a result of poor stowage or the fall of some heavy object. A can or cases of cans, if improperly stowed, may be damaged by the swaying of the ship.

"11.—The bulk of the evidence satisfies us that the 446 cases of canned pears arrived at the port in a flattened or crushed condition, which points to the fact that the source of the damage was not the alleged sweating while in transit but some outside force attributable to some negligent act or omission of the carrier, and we so conclude.

"12.—The damage to the cargo of pears was not due to unforeseen or fortuitous causes, to an act of God, or to any of the exceptions provided by law which relieve the maritime carrier from liability, and it was not due to fault or negligence of the vendor or consignor, or of the consignee.

"13.—The negligence of codefendant Pope & Talbot Lines, in permitting its employees, the stevedores paid by it, to. let

a considerable number of cans of pears fall and become damaged while being unloaded, also contributed to the loss of the goods in question.

"14.—Plaintiff Rhode Island Insurance Co., by the policy issued to consignee A. de Cardi, Inc., and its subrogation contract in making payment of the sum of $3,742.13 (*sic*) for the damages sustained by the insured, was subrogated to the rights and actions against the defendants up to that sum."

Relying on the foregoing findings of fact and on the conclusions of law which it also made, the court granted the complaint and ordered defendants to pay to plaintiff the sum of $3,742.13, plus costs and $500 for attorney's fees. Feeling aggrieved by that judgment, defendants appealed to this Court assigning the following errors:

"1. The trial court erred in weighing the evidence and concluding, as a question of fact, that the damage to the goods arose from defendants' negligence and not as a result of sweating while in transit.

"2. The trial court erred in construing the federal statute known as the 'Carriage of Goods by Sea Act' (46 U.S.C.A., § 1300 *et seq.*), and applying the same to the facts of the case."

■ In the case at bar, the rights of plaintiff and of codefendant Pacific Argentine Brazil Line are governed by the provisions of the Carriage of Goods by Sea Act, 46 U.S.C.A., §§ 1300–15. Although § 1300 of the Act provides that it shall apply only to cases involving foreign trade, and in this case the goods were brought to Puerto Rico from a port in the continental United States, namely, Portland, Oregon, which is domestic trade—46 U.S.C.A., § 1312—yet that Act applies to the case at bar because it is expressly so stated in the bill of lading.[2] See 46 U.S.C.A., § 1312; *Globe Solvents Co.* v. *The California*, 167 F. 2d 859, *cert. den.*, 335 U. S. 844.

---

[2] The bill of lading provides that:

"1. (*a*) From the time the goods are loaded on, to the time they are discharged from, the ship, this bill of lading shall have effect subject to the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which shall be deemed to be incorporated herein . . ."

 The evidence which the lower court had under consideration, viewed in the light of the Carriage of Goods by Sea Act, clearly establishes the negligence of codefendant Pacific Argentine & Brazil Line, Inc.. The Act enumerates the instances in which the carrier is relieved of liability for damage to the goods—46 U.S.C.A., § 1304 (2)—providing as follows:

"2. Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from:

" . . . . . . .

"(q) Any other cause arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier, *but the burden of proof shall be on the person claiming the benefit of this exception to show that neither the actual fault or privity of the carrier nor the fault or neglect of the agents or servants of the carrier contributed to the loss or damage.*" (Italics ours.)

The American authorities construing this statute are agreed that a prima facie case is made against the maritime carrier as soon as it is established that the goods were loaded in good condition but were delivered in a damaged condition by the carrier to the consignee. Also, that once a prima facie case is established the burden lies with the carrier to prove that the damage was not due to its negligence. *Schroeder Bros.* v. *The Saturnia*, 123 F. Supp. 282, 284; *American Tobacco Co.* v. *The Katingo Hadjipatera*, 194 F. 2d 449, 450; *Flota Mercante del Estado* v. *Orient Ins. Co.*, 198 F. 2d 740; *McNeely & Price Co.* v. *The Exchequer*, 100 F. Supp. 343. See, also, *The S.S. Asturias*, 40 F. Supp. 168, affirmed in *Wessels* v. *The Asturias*, 126 F. 2d 999, and *Aetna Insurance Co.* v. *Florida Towing Corp.*, 37 F. Supp. 781. In the case at bar, the goods—"Thurber" canned pears—were packed in closed pasteboard cases. Only their exterior condition could be appreciated when they were loaded. The master of the ship, K. H. Carlson, declared that all the cases were in good condition when they were

loaded. Also, the bill of lading did not set forth anything to indicate that the goods or any part thereof were damaged. Of course, the fact that the cases were in good condition does not necessarily imply that the cans of pears were, too. *Cf. McNeely & Price Co.* v. *The Exchequer, supra.* Still, be that as it may, defendants made no averment to that effect. The fact remains that when the goods were delivered to the consignee the cans of pears involved in the claim were badly dented and many of them were crushed and the contents dripping. Also, many of the pasteboard cases in which they were packed were crumpled and some badly damaged. It is clear that the damages to the goods were of such nature as to infer that they did not exist when the goods were put aboard the ship in which they were brought. This is sufficient to make a prima facie case against the maritime carrier. *Flota Mercante del Estado* v. *Orient Insurance Co., supra; McNeely & Price Co.* v. *Ellerman & Bucknall S.S. Co.,* 100 F. Supp. 339, 341; *American Tobacco Co.* v. *The Katingo Hadjipatera, supra.*

██ Let us consider whether the evidence before the lower court was sufficient to rebut the prima facie case. Appellants maintain that the damage caused to the goods resulted from the sweating which normally occurs with this type of goods while in transit from a cold to a tropical climate, and that the court therefore erred in holding that it arose from negligence. The evidence on record discloses that when canned goods are transported from a cold to a tropical climate, the cans do not normally get warmer with sufficient rapidity and on coming in contact with warm air of tropical regions, while the cans are still cold, part of the water vapor which the warm air contains is condensed, *i. e.,* it turns into liquid and the cans are moistened. The American decisions have recognized that sweating is a peril of the sea, provided that all reasonable precautions to avoid it are taken by the carrier. *Wessels* v. *The Asturias, supra; Standard Brands* v. *Thos. & Jno. Brocklebank,* 81 F. Supp.

670; *George F. Pettinos, Inc.* v. *American Export Lines,* 68 F. Supp. 759, 762, affirmed 159 F. 2d 247. Once this is established the maritime carrier is not responsible for damage caused by sweating, under the provisions of the Carriage of Goods by Sea Act. 46 U.S.C.A., § 1304(2)(c).

The evidence shows that a great part of the goods was damaged through the negligence of the carrier in placing or letting fall some heavy object on the packs stowed in the hold of the ship, as a result of which a large number of cans were crumpled or crushed and many of the pasteboard cases in which they were packed were destroyed. It is therefore clear that the court committed no error in holding Pacific Argentine Brazil Line, Inc. responsible for the damaged goods.

The evidence further shows that approximately 500 cans—a small part of the damaged cans—suffered damage when the cases in which they were packed fell from an altitude of about 15 to 20 feet and the bottoms came off, as they were handled by the stevedores in the process of unloading under the supervision of codefendant Pope & Talbot Lines.[3] We agree with appellants that these damages did not arise, as concluded by the lower court, from negligence in the process of unloading. The bottom of the cases became unglued, despite the precautions taken by the stevedores while handling them, because the glue which kept the bottom flaps stuck together became wet and it was practically impossible, under the circumstances, to prevent the bottom of some of the cases from becoming unglued. However, this does not free Pacific Argentine Brazil Line from responsibility for the damaged cans. The evidence indicates that the cases could have become wet through codefendant's negligence. As stated before, there is evidence from which to infer that codefendant placed or let some heavy object fall on the goods

---

[3] Pope & Talbot Lines unloaded the ship as agent for Pope & Talbot Lines, Inc., a California corporation, which in turn was the agent for the other codefendant, Pacific Argentine Brazil Line.

stowed in the hold of the ship, as a result thereof many cans were crushed to such an extent that they were broken and the contents spilled. It very well could happen that the liquid contents, spilled from the cans, and not the sweating as alleged by appellants, moistened the boxes with the result already indicated. In our opinion, the defendant did not comply with the requirement prescribed by the Carriage of Goods by Sea Act which relieves it of liability for the damages in question; in other words, there was no showing that the damages resulted from sweating or any one of the other causes specified in the Act.

In view of above considerations, we conclude that the lower court committed no error in holding Pacific Argentine Brazil Line responsible for the entire damaged cargo.

As to Pope & Talbot Lines, the situation is different. It merely unloaded and delivered the goods to the consignee as agent for Pope & Talbot Lines, Inc. It is therefore obvious that it does not come within the Carriage of Goods by Sea Act. It is not even a carrier, according to the definition of this term in the Act. 46 U.S.C.A., § 1301 (a). It can be held liable only if it is affirmatively proved that it was negligent, and this was not shown by the evidence in the instant case. Consequently, it should be relieved of liability for the damages in question.

The judgment will be affirmed as to Pacific Argentine Brazil Line, Inc. As to codefendant Pope & Talbot Lines, the judgment appealed from will be reversed and the complaint dismissed.

Mr. Justice Pérez Pimentel did not participate herein.

Mr. Justice Belaval dissented.