RHODE ISLAND INSURANCE CO., demandante y apelada, *v.* POPE & TALBOT LINES y PACIFIC ARGENTINE BRAZIL LINE, INC., demandadas y apelantes.

Número 11412.

*Sometido:* 1 de marzo de 1955.　*Resuelto:* 29 de junio de 1955.

---

*Brown, Newsom & Córdova,* abogados de las apelantes; *F. Prieto Azúar,* abogado de la apelada.

El Juez Asociado Señor Marrero emitió la opinión del Tribunal.

La Rhode Island Insurance Company instó demanda de daños y perjuicios contra la Pope & Talbot Lines y la Pacific Argentine Brazil Line, Inc., reclamándoles la suma de $3,797.20 más costas, intereses legales, y honorarios de abogado. Alegó en síntesis que A. de Cardi, Inc., compró un cargamento de peras enlatadas por el precio de $45,243.82 y éste le fué enviado a San Juan desde el puerto de Portland, Estado de Oregón, el día 23 de diciembre de 1948 a bordo de un vapor propiedad de las demandadas y por ellas operado; que mientras se hallaba a bordo del vapor de las demandadas, dicha mercancía sufrió daños montantes a $3,797.20; que los mismos se debieron exclusivamente a la negligencia de los empleados de aquéllas mientras actuaban en el curso de sus funciones como tales; que esos daños estaban cubiertos por una póliza de seguros expedida por la demandante a favor de A. de Cardi, Inc.; y que por tal razón la demandante pagó a ésta los referidos $3,797.20, quedando por tal virtud subrogada en todos sus derechos y acciones contra las demandadas por los daños causados a la mercancía, hasta la indicada suma.

Contestaron las demandadas aceptando que la mercancía había sido enviada en la forma alegada en la demanda y que al llegar a San Juan estaba parcialmente damnificada; pero negaron los demás hechos esenciales de la demanda. Además la demandada Pacific Argentine Brazil Line, Inc., alegó afirmativamente: (1) que la acción de la demandante había prescrito; (2) que los daños sufridos por la mercancía no se debieron a su negligencia; y (3) que estaba relevada de toda responsabilidad por los daños que hubiere sufrido la mercancía, a tenor con lo dispuesto en la Ley del Congreso conocida como "Carriage of Goods by Sea Act", 46 U.S.C.A. secs. 1300 et seq., aprobada el 16 de abril de 1936, porque:

"(a) Los daños sufridos por dicha mercancía se debieron a defectos inherentes y vicios de la misma mercancía. (46 U.S.C.A. 1304 (m))*.

"(*b*) Los daños sufridos por dicha mercancía se debieron a causas surgidas sin que interviniera la culpa o negligencia de esta demandada o sus agentes o empleados. *(46 U.S.C.A. 1304 (q))*.

"(*c*) Los daños sufridos por dicha mercancía se debieron a riesgos, peligros y accidentes del mar, sin que interviniera ningún acto de negligencia de esta demandada, sus agentes o empleados, que pudiera haber contribuído en forma alguna a dichos daños. *(46 U.S.C.A., sec. 1304 (c))*."

Visto el caso en sus méritos, el tribunal inferior dictó sentencia y una opinión en la que figuran las siguientes conclusiones de hechos: (¹)

"1.—La firma A. de Cardi, Inc., allá para fines del año 1948 ordenó y compró a la Washington Canners Cooperative de Vancouver, estado de Wáshington, un cargamento de peras enlatadas marca 'Thurber', por el precio de $45,243.82, el cual fué colocado por la vendedora y consignataria a bordo del vapor P. & T. Trader en el puerto de Portland en diciembre 23, 1948, con destino a San Juan, Puerto Rico.

"2.—La demandada Pacific Argentine Brazil Line, Inc., una corporación del estado de California, dedicada al negocio de porteador público marítimo, era dueña y operadora del vapor P. & T. Trader en que se transportó la referida mercancía. La codemandada Pope & Talbot Lines es una corporación doméstica, agente en Puerto Rico de la corporación también del estado de California, Pope & Talbot, Inc., la que a su vez es agente y operadora (*managing operator*) de dicha Pacific Argentine Brazil Line, Inc. La Pope & Talbot Lines, además pagaba los estibadores que actuaban como sus propios empleados en la descarga del buque en cuestión.

"3.—Arribaron al puerto de San Juan, de conformidad con el conocimiento de embarque, 4,775 cajas de latas de peras, destinadas a la oficina de San Juan, 625 cajas destinadas a Mayagüez y 600 cajas a Ponce. Las peras destinadas a Ponce y Mayagüez y que llegaron en el mismo vapor para la compradora A. de Cardi, Inc., llegaron y se entregaron en perfecto estado.

---

(¹) Conviene señalar que el caso fué visto en sus méritos en el Tribunal Superior ante el Hon. Pedro Pérez Pimentel, quien no lo resolvió por haber sido nombrado poco tiempo después Juez de este Tribunal. Las partes acordaron someter el caso por la transcripción de la evidencia y a base de ella fué resuelto por el Hon. Ángel M. Umpierre, del Tribunal Superior.

"4.—Del cargamento de peras destinado a la oficina de San Juan de la consignataria, 446 cajas de peras 'Thurber', llegaron en estado 'completamente inservible.'

"5.—El *surveyor* de la demandante, Sr. Benjamín Acosta, quien inspeccionó la mercancía a su llegada a San Juan, con vista dé su avalúo de los daños, el conocimiento de embarque y la factura de los embarcadores, estimó la pérdida sufrida en $3,742.13.

"6.—Cuando la mercancía se hallaba todavía en proceso de entrega en la bodega 'había una estiba grande, plana, con un número de cajas marcadas con un forro negro como de grasa, cuyo forro era hondo y había hecho una depresión.' Un número considerable de latas de peras 'estaban apretadas por una presión, aplastadas, no meramente hinchadas o expandidas, sino retorcidas.' En el muelle había otra porción de las mismas latas de peras, las cuales estaban 'desbaratadas y regadas por el muelle.' El envase de las latas era de cartón corriente y común.

"7.—En una de las estibas de cartones conteniendo latas de peras había dos líneas, dos indentaciones (sic), bastante profundas, 'como si algún objeto pesado lo hubiesen dejado caer sobre esas cajas.'

"8.—Al ser colocado el cargamento de peras a bordo del vapor P. & T. Trader, en Portland, Ore., se hallaban 'en aparente buen estado y condición.'

"9.—No nos convence la prueba pericial de las demandadas en el sentido de que las latas de peras se damnificaron por efecto de la condensación debido a cambios de temperatura durante el viaje. No es posible colegir que de un total de 6,000 cartones de latas de peras sólo 446 sufriesen los efectos del cambio de temperatura.

"10.—La evidencia ha demostrado que las latas quedaron comprimidas (*crushed*) y aplastadas, como si algún objeto muy pesado hubiese sido colocado sobre las mismas. Las latas sufrieron golpes, y esos golpes producen indentaciones en las mismas; debido a una mala estibación, o a que un peso caiga sobre la mercancía, ésta puede averiarse en tránsito; que una lata o unos cartones con latas, si están mal estibados, con el movimiento del barco se pueden averiar.

"11.—El conjunto de la prueba ha demostrado a nuestra satisfacción que las 446 cajas de latas de peras llegaron al puerto en forma aplastada o *crushed*, lo que denota que el origen del daño no fué la alegada condensación en tránsito y sí alguna

fuerza externa atribuíble al acto u omisión negligente del porteador, y así lo concluímos.

"12.—El cargamento de peras no se damnificó por causas inevitables o fortuitas, por el acto de la Providencia (*act of God*), ni por ninguna de las excepciones que bajo las disposiciones de ley exoneran al porteador marítimo de responsabilidad, así como tampoco por culpa o negligencia de la vendedora o consignadora ni de la consignataria.

"13.—También contribuyó a la pérdida de la referida mercancía la negligencia de la codemandada Pope & Talbot Lines, al permitir que sus propios empleados, los estibadores pagados por ella, dejasen caer y averiar durante el proceso de la descarga, un considerable número de latas de peras.

"14.—La demandante Rhode Island Insurance Co., en virtud de póliza expedida a la consignataria A. de Cardi, Inc., y de su contrato de subrogación al efectuar el pago de la suma de $3,742.13 (sic) por los daños sufridos por su dicha asegurada quedó subrogada en sus derechos y acciones contra las demandadas hasta la referida suma."

Fundado en las anteriores conclusiones de hechos, y en las de derecho que también hizo, el tribunal declaró con lugar la demanda y condenó a las demandadas a pagar a la demandante la suma de $3,742.13 más las costas y $500 por concepto de honorarios de abogado. No conformes con la sentencia dictada, las demandadas apelaron para ante este Tribunal. Señalan ahora los siguientes errores:

"1. El tribunal sentenciador cometió error en la apreciación de la prueba al concluir, como cuestión de hecho, que los daños sufridos por la mercancía se debieron a la negligencia de las demandadas y no ocurrieron como resultado de la condensación ocurrida en el viaje.

"2. El tribunal sentenciador cometió error al interpretar el estatuto Federal conocido como el 'Carriage of Goods by Sea Act' (46 USCA, secs. 1300 et seq.) y al aplicar el mismo a los hechos de este caso."

En el caso de autos los derechos de la parte demandante y los de la codemandada Pacific Argentine Brazil Line se regulan por lo dispuesto en la Ley Sobre Transporte Marítimo de Mercancía (*Carriage of Goods by Sea Act*) 46

U.S.C.A., secs. 1300 a 1315. Aunque la sec. 1300 de dicha Ley dispone que ésta será aplicable solamente a casos en que se trate de comercio con el extranjero (*foreign trade*) y en el presente la mercancía fué traída a Puerto Rico de un puerto de los Estados Unidos continentales, es decir de Portland, Oregón, por lo cual se trata de comercio doméstico—46 U.S.C.A., sec. 1312—sin embargo, dicha Ley es aplicable al caso de autos, ya que así se especifica taxativamente en el conocimiento de embarque.([2]) Véanse: 46 U.S.C.A., sec. 1312; *Globe Solvents Co.* v. *The California*, 167 F.2d 859, certiorari denegado en 335 U. S. 844.

La prueba que tuvo ante sí el tribunal inferior considerada a la luz de la Ley Sobre Transporte Marítimo de Mercancía establece claramente la negligencia de la codemandada Pacific Argentine Brazil Line, Inc. Dicha Ley enumera los casos en que se exime de responsabilidad al porteador por daños a la mercancía—46 U.S.C.A. 1304 (2)—y dispone lo siguiente:

"2. Ni el porteador ni el vapor serán responsables de pérdida o daños provenientes o resultantes de:

". . . . . . . .

"(*q*) Cualquiera otra causa que surja sin la culpa directa, y negligencia del porteador y sin la culpa o negligencia de los agentes o empleados del porteador, *mas el peso de la prueba recaerá sobre la persona que alegue el beneficio de esta excepción para demostrar que ni la culpa directa o negligencia del porteador ni la culpa o negligencia de los agentes o sirvientes del porteador contribuyeron a la pérdida o daño.*" (Bastardillas nuestras.)

La jurisprudencia americana que interpreta el referido estatuto está conteste en que se establece un caso *prima facie* contra el porteador marítimo tan pronto como se prueba que

---

([2]) El conocimiento de embarque especifica que:

"1. (*a*) Este conocimiento de embarque surtirá efecto desde el momento en que se ponga la mercancía a bordo del vapor hasta el momento en que ésta sea descargada del mismo, sujeto a la Ley Sobre Transporte Marítimo de Mercancía de los Estados Unidos, aprobada el 16 de abril de 1936, la que se considerará incorporada al presente conocimiento. . . ."

la mercancía al ser cargada en el vapor estaba en buenas condiciones y que al ser entregada por el porteador al consignatario la misma estaba dañada o averiada. También, en que una vez establecido ese caso *prima facie* incumbe a dicho porteador demostrar que el daño no se debió a su negligencia. *Schroeder Bros.* v. *The Saturnia*, 123 F.Supp. 282, 284; *American Tobacco Co.* v. *The Katingo Hadjipatera*, 194 F.2d 449, 450; *Flota Mercante del Estado* v. *Orient Ins. Co.*, 198 F.2d 740; *McNeely & Price Co.* v. *The Exchequer*, 100 F.Supp. 343. Véanse, además: *The S. S. Asturias*, 40 F.Supp. 168, confirmado en *Wessels* v. *The Asturias*, 126 F.2d 999, y *Aetna Insurance Co.* v. *Florida Towing Corp.*, 37 F.Supp. 781. En el caso de autos la mercancía—latas de peras "Thurber"—venía empacada en cajas de cartón que estaban cerradas. Al ser cargadas sólo podía apreciarse la condición exterior de éstas. El capitán del vapor, K. H. Carlson, declara que todas las cajas estaban en buenas condiciones al ser puestas a bordo. Además en el conocimiento de embarque no se hizo observación alguna que indicara que la mercancía o parte de ella estuviera dañada. Desde luego, el hecho de que las cajas estuviesen en buenas condiciones no implica necesariamente que las latas de peras también lo estuviesen. *Cf. McNeely & Price Co.* v. *The Exchequer et al.*, supra. Mas, sea ello como fuere, no hay alegación alguna de las demandadas a ese efecto. Sin embargo, el hecho cierto es que cuando le fué entregada la mercancía al consignatario, las latas de peras objeto de la reclamación presentaban serias abolladuras y en muchos casos estaban aplastadas y se había derramado su contenido. También, muchas de las cajas de cartón en que venían empacadas se habían destruído y otras estaban seriamente averiadas. Es claro que los daños sufridos por la mercancía fueron de tal naturaleza que puede inferirse que no existían cuando la mercancía fué puesta a bordo del vapor que la trajo, y ello es suficiente para establecer un caso *prima facie* contra el porteador marítimo. *Flota Mercante del Estado* v. *Orient Insurance Co.*, supra; *McNeely &*

*Price Co.* v. *Ellerman & Bucknall S. S. Co.*, 100 F.Supp. 339, 341; *American Tobacco Co.* v. *The Katingo Hadjipatera*, supra.

■■ Pasemos entonces a considerar si la prueba que tuvo ante sí el tribunal inferior fué suficiente para rebatir dicho caso *prima facie.* Las apelantes sostienen que los daños sufridos por la mercancía se debieron a la condensación que normalmente ocurre cuando se transporta esta clase de mercancía de climas fríos a climas tropicales y que, en su consecuencia, el tribunal cometió error al determinar que se debió a su negligencia. La prueba que figura en autos demuestra que cuando se traen productos enlatados de lugares fríos al trópico, las latas normalmente no se calientan con suficiente rapidez y al venir en contacto con el aire caliente de las regiones tropicales, estando aún frías, parte del vapor de agua que contiene el aire caliente se condensa, o sea, se convierte en líquido y las latas se humedecen. La jurisprudencia americana ha reconocido que la condensación (*sweating*) constituye un riesgo del mar, siempre que el porteador marítimo haya tomado todas las precauciones razonables para evitarlo. *Wessels* v. *The Asturias*, supra; *Standard Brands* v. *Thos. & Jno. Brocklebank*, 81 F.Supp. 670; *George F. Pettinos, Inc.* v. *American Export Lines*, 68 F.Supp. 759, 762, confirmado en 159 F.2d 247. Una vez aprobado eso, el porteador marítimo queda exento de responsabilidad por los daños causados por la condensación, conforme a lo dispuesto en la Ley Sobre Transporte Marítimo de Mercancía. Sec. 1304 (2) (*c*).

La evidencia demuestra que gran parte de la mercancía resultó dañada por la negligencia de la propia porteadora al colocar o dejar caer algún objeto pesado sobre las estibas en la bodega del barco, resultando así abolladas o aplastadas un gran número de latas y destruídas muchas de las cajas de cartón en que éstas venían empacadas. Es claro, por tanto, que el tribunal no cometió error al hacer responsable a la Pacific Argentine Brazil Line, Inc., por la mercancía así damnificada.

■ La evidencia también demuestra que alrededor de 500 latas—una pequeña parte de las damnificadas—recibieron daños como resultado de haberse caído de una altura de 15 a 20 pies, al desfondarse las cajas en que venían empacadas, cuando éstas eran manipuladas por los estibadores en el procedimiento de descargue, realizado por la codemandada Pope & Talbot Lines.(3)   Convenimos con las apelantes en que dichos daños no resultaron como concluyó el tribunal a quo, de negligencia en el proceso de descargue.   Las cajas en cuestión se desfondaron, a pesar de las precauciones que tomaron los estibadores al manipularlas, debido a que se había humedecido la cola o pega que unía las tapas del fondo y era prácticamente imposible, dadas las circunstancias, evitar que a un número de ellas se les despegara el fondo.   Mas ello no exime de responsabilidad a la Pacific Argentine Brazil Line por las latas así damnificadas.   La prueba indica que las cajas pudieron haberse humedecido por la negligencia de dicha codemandada.   Como dijimos anteriormente, hay evidencia de la cual inferir que ésta colocó o dejó caer algún objeto pesado sobre la mercancía en la bodega del barco y como consecuencia de ello se aplastaron muchas latas, a tal extremo que se rompieron y se derramó su contenido.   Muy bien pudo suceder que el contenido líquido que se derramó de dichas latas, y no la condensación como alegan las apelantes, humedeciera las cajas con los resultados antes indicados.   A nuestro juicio la demandada no satisfizo el requisito que para eximirse de responsabilidad por los referidos daños le impuso la Ley Sobre Transporte Marítimo de Mercancía, o sea, no probó que los daños se debieran a la condensación o a alguna de las otras causas enumeradas en dicha Ley.

En vista de las anteriores consideraciones, podemos concluir que el tribunal a quo no cometió error al hacer responsable a la Pacific Argentine Brazil Line por la totalidad de la mercancía damnificada.

---

(3) La Pope & Talbot Lines descargó el barco actuando como agente de la Pope & Talbot Lines, Inc., corporación de California, que a su vez actuaba como agente de la otra codemandada Pacific Argentine Brazil Line.

464

En cuanto a la Pope & Talbot Lines la situación es distinta. Ésta se limitó a descargar la mercancía y a entregarla al consignatario, actuando como agente de la Pope & Talbot Lines, Inc. Por tanto, es obvio que la Ley Sobre Transporte Marítimo de Mercancía no le es. aplicable. Ella no era siquiera una porteadora (*carrier*) según se define ese término en dicha Ley. 46 U.S.C.A. sec. 1301(*a*). La única forma en que podría imputársele responsabilidad en este caso sería probando afirmativamente su negligencia, cosa que la evidencia en este caso no establece. En consecuencia de ello, debe eximírsele de responsabilidad por los daños habidos.

*Debe confirmarse la sentencia en cuanto a la Pacific Argentine Brazil Line, Inc. En lo que respecta a la codemandada Pope & Talbot Lines la sentencia apelada será revocada y declarada sin lugar la demanda.*

El Juez Asociado Pérez Pimentel no intervino.

El Juez Asociado Sr. Belaval disintió.