KURT ORBAN COMPANY,
INC., Plaintiff,

v.

S/S "FEDERAL ST. CLAIR," et.
al., Defendants.

No. 79 Civ. 2129 (KTD).

United States District Court,
S. D. New York.

June 1, 1981.

Yorkston W. Grist, New York City, for plaintiff; Jeffrey L. Shernoff, David Mazaroli, New York City, of counsel.

Cichanowicz & Callan, New York City, for defendants; Paul M. Keane, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

This is an action for damages arising from the delivery of coils of steel wire in a rusted condition. Plaintiff Kurt Orban Company is a New York corporation with its principal place of business in Wayne, New Jersey. The affected cargo was carried in international shipment aboard the S/S Federal St. Clair, a steel steamship registered under the Liberian flag. Throughout the period from which this action arises, the S/S Federal St. Clair was chartered by the owner, defendant Federal Pacific (Liberia) Ltd., to defendant Federal Commerce and Navigation, Ltd. This court has jurisdiction over this action pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333.

This case was tried without a jury on September 29, 1980. The following shall constitute the court's findings of fact and conclusions of law.

I.

On or about March 30, 1978, plaintiff purchased a shipment of steel wire from a manufacturer in Japan to be delivered to Detroit, Michigan. On or about May 5, 1978, the steel wire was placed upon the S/S Federal St. Clair in Kobe, Japan for transport to its final destination in Detroit. Two hundred thirty-seven coils of steel wire in 119 packages were placed aboard the ship pursuant to a bill of lading dated May 5, 1978, issued by the defendant carrier. The coils were wrapped in a blue opaque, water-resistant wrapper. The bill of lading was issued as clean on board, and there were no exceptions taken by the carrier as to the condition of the cargo.

Three months after leaving Japan, the S/S Federal St. Clair arrived at port in Detroit. Seventeen of the coils were found to be damaged by rust. It is uncontroverted that the rust was caused by the exposure to fresh water of certain coils that were stowed on the lowest level of the ship. The damaged coils required reconditioning. Plaintiff brought this action to recover the costs of reconditioning and other damages sustained as a result of the rusted condition of the coils.

II.

Liability under contracts for the carriage of goods to or from United States ports is governed by the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1300 et seq. Under Sections 3–4 of COGSA, 46 U.S.C. §§ 1303–04, a shipper or consignee of goods who seeks recovery of damages from the carrier must bear the initial burden of proving delivery of the goods to the carrier in good order and a subsequent delivery by the carrier at the destination in a damaged state. Vana Trading Co. v. S.S. METTE SKOV, 556 F.2d 100, 104 (2d Cir.), cert. denied, 434 U.S. 892, 98 S.Ct. 267, 54 L.Ed.2d 177 (1977). The introduction into evidence of a clean on board bill of lading is sufficient, for the purpose of establishing a prima facie case, to show that goods were delivered to the carrier in good condition. Metalimport of Romania v. S.S. Turkia, 443

F.Supp. 656 (S.D.N.Y.1977), *aff'd*, 580 F.2d 1045 (2d Cir. 1978). If the plaintiff also shows that the cargo was delivered at its destination by the carrier in a damaged condition, then the carrier is liable for the damages. The carrier, however, can avoid liability if it can affirmatively show that the cause of the damage was either not due to its negligence or was the result of an "excepted cause" set forth in Section 1304(2) of COGSA. *American Tobacco Co. v. The Katings Hadjipatera*, 194 F.2d 449 (2d Cir. 1951), *cert. denied*, 343 U.S. 978, 77 S.Ct. 1076, 96 L.Ed. 1370 (1952).

 Under the facts presented here, plaintiff has set forth a *prima facie* case of defendants' liability. The bill of lading issued by the carrier did not note any irregularity or damage to the steel coils when the goods were received for shipment at Kobe, Japan. The surveyor reports offered by both parties showed that when the steel coils arrived in Detroit three months later, the water-resistant wrapping was torn and the coils were rusted. It appears that during shipment the wrapping was torn and rain water or condensation during the three months at sea caused the coil to rust.

The defendants argue that the carrier was unable to view the condition of the wire when it was delivered to it in Japan for shipping because of the blue opaque wrapping. Carriers are exempt from liability for "latent defects not discoverable by due diligence." 40 U.S.C. § 1304(2)(p). Defendants argue, therefore, that despite the clean bill of lading the plaintiff has submitted no proof of the good condition of the wire prior to shipment, and, accordingly, plaintiff may not recover for alleged damages. *Cf. Hecht, Levis & Kahn, Inc. v. S.S. President Buchanan*, 236 F.2d 627 (2d Cir. 1956). To support this argument, defendant has submitted into evidence a surveying report which surmises that the rust damage was "quite possibly" a pre-shipment condition.

The evidence adduced at trial by the defendants is insufficient to overcome plaintiff's *prima facie* case. The wire was delivered to the carrier wrapped in a layer of brown paper and in an outer layer of water-resistant blue plastic. Defendants argument that the rust may have been present despite the secure wrapping at the time the goods were delivered to the carrier is implausible under the circumstances. The clean bill of lading issued by the carrier at least establishes the fact that there were no holes or significant tears in the wrapper. Defendants' only witness testified that such defects in the wrapper would have been described in the bill of lading. Of course, if there were any holes, the defendants would have noticed any of the rust they allege existed prior to shipment and should have reported that on the bill of lading. The holes in the exterior wrapping occurred during the time that the goods were aboard the vessel. The preponderance of the evidence shows that any rust developed when the coils were thereafter exposed to fresh water. This is not a case where there exists an inherent or latent defect that is not ascertainable by a simple visual inspection, *see Hecht, Levis & Kahn, Inc., supra*, and no additional proof is required on the part of the plaintiff.

On the damages issues, plaintiff is entitled to recover damages consisting of inland freight costs, reconditioning costs and handling charges. The costs of plaintiff's survey, however, are not an appropriate item of damages. Accordingly, plaintiff is awarded $3,723.15.

Settle order.