**ASBESTOS CORP. LTD. et al.,
Plaintiffs-Appellees,**

v.

**COMPAGNIE DE NAVIGATION FRAIS-
SINET ET CYPRIEN FABRE et al.,
Defendants-Appellants.**

No. 679, Docket 72–2178.

United States Court of Appeals,
Second Circuit.

Argued April 9, 1973.

Decided June 5, 1973.

670

James H. Simonson, New York City (John T. Kochendorfer, and Bigham Englar Jones & Houston, New York City, on the brief), for plaintiffs-appellees.

Edward L. Smith, New York City (Walter P. Hickey, Kevin D. Slakas, and Kirlin, Campbell & Keating, New York City, on the brief), for defendants-appellants.

Before SMITH, HAYS and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

Appellants, owners of the French vessel M. V. Marquette, appeal from an interlocutory judgment entered in the Southern District of New York, Richard H. Levet, District Judge, 345 F.Supp. 814 (S.D.N.Y.1972), holding them liable for damage to cargo for which the appellee shippers held bills of lading.[1] The damage was caused by a fire that broke out aboard the vessel on July 21, 1964 while she was crossing the North Atlantic en route from United States and Canadian ports on the Great Lakes to European ports. The essential issues, which Judge Levet decided adversely to appellants, are whether the vessel was unseaworthy because of the absence of fire fighting equipment adequate to fight an engine room fire, and whether appellants are entitled to claim certain statutory exemptions from liability. We affirm the judgment of the district court.

Judge Levet's opinion of June 15, 1972 sets forth a clear, comprehensive and detailed statement of both the facts and the controlling law. We agree with his application of the law to the facts. It is sufficient for our purpose therefore merely to state the essential claims of fact and law, and the district court's rulings thereon.

## I.

The first issue is whether the Marquette was unseaworthy because she failed to maintain fire fighting equipment adequate to fight an engine room fire.[2]

The facts are not in dispute. A fire broke out in the vessel's engine room when a defective screw fell from an oil pump. This caused oil to spray out and to become ignited by the manifold of an adjacent propulsion engine. It is not claimed that this ignition of the fire was caused by any negligence on the part of appellants. The fire spread

---

1. The interlocutory judgment provides for determination of damages by a special master.

2. Under the terms of the bills of lading here involved, the rights of the parties are governed by the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. §§ 1300–1315 (1970), and the Fire Statute, 46 U.S.C. § 182 (1970).

Under Section 3(1) of COGSA, 46 U.S.C. § 1303(1), it is the duty of the carrier "to exercise due diligence to . . . make the ship seaworthy. . . ." Section 4(1), 46 U.S.C. § 1304 (1), provides that "[w]henever loss or damage has resulted from unseaworthiness, the burden of proving the exercise of due diligence shall be on the carrier. . . ."

slowly from the engine room and reached the cargo hold several hours later. It could not be extinguished because all the fire fighting equipment was either located in or controlled from the engine room.[3]

Upon these facts and others set forth in his opinion, Judge Levet held that the Marquette was unseaworthy because appellants had failed to exercise due diligence in equipping the vessel adequately to fight an engine room fire. He properly looked to all the circumstances to determine whether the vessel was seaworthy. See, e. g., Edmond Weil, Inc. v. American West African Line, Inc., 147 F.2d 363 (2 Cir. 1945). He found that an engine room is the compartment of a ship most prone to fire because of the presence of large quantities of hot oil and numerous surfaces sufficiently hot to ignite the oil. A shipowner therefore may reasonably be expected to anticipate that a fire may break out in the engine room, thus disabling all fire fighting equipment located in or controlled from that room. Consequently, it is negligence to fail to provide an emergency pump or fire extinguisher system located or controlled from outside the engine room. Christopher v. Grueby, 40 F.2d 8, 11–12 (1 Cir.), cert. denied, 282 U.S. 876 (1930). Appellants failed to maintain equipment which could be utilized in the event of a fire in the engine room notwithstanding that adequate equipment could have been provided with little effort and expense.

Appellants contend that the vessel's fire fighting system was presumptively adequate because she had been issued a safety certificate pursuant to the Safety of Life at Sea Convention (SOLAS). Such certificates are issued if a vessel meets certain safety standards prescribed by SOLAS, including fire equipment standards. SOLAS, Ch. I, Reg. 11(1948). Although the Marquette had been issued such a certificate prior to the fire here involved, we agree with Judge Levet that compliance with SOLAS did not establish the vessel's seaworthiness under COGSA. Since appellants expressly agreed in the bills of lading to be bound by COGSA, the standard of seaworthiness prescribed in that Act is controlling. The COGSA standard requires the court to make an independent determination, based among other things upon expert testimony and accepted safety practices, as to whether the vessel had adequate equipment. See, e. g., Edmond Weil, Inc. v. American West African Line, Inc., *supra*. We are satisfied that Judge Levet gave appropriate weight to the SOLAS certificate[4] and other evidence relating to the fitness of the Marquette's fire fighting equipment.

Appellants further contend that the standard for seaworthiness should be conformity with the practice generally existing in the trade. They argue that the Marquette met that standard. While proof of trade practice is not necessarily proof of what constitutes seaworthiness under the circumstances, see, e. g., Petition of Skibs A/S Jolund, 250 F.2d 777, 786 (2 Cir. 1957), cert. denied, 356 U.S. 933 (1958), Judge Levet found that "[t]he use of emergency fire pumps or CO₂ or foam systems with controls lo-

3. The Marquette was equipped with three pumps that could be used to fight fires. All were located in the engine room, were controlled from that room, and to operate them it was necessary to enter that room. The vessel also had three foam extinguishers, three CO₂ extinguishers, and two boxes of sand for fire fighting purposes. All this equipment was located in the engine room.

The vessel also maintained a steam smothering system for fighting fires. This system had outlets in the engine room and in the cargo holds. To operate the system, however, it was necessary to be in the engine room to light the auxiliary steam boiler and to open the values.

4. Actually it appears that the Marquette did not have to meet any requirements as to fire fighting equipment in order to be certified under SOLAS. The vessel was constructed when SOLAS (1929 Convention) did not have any such standards applicable to a vessel such as the Marquette. The standards adopted in 1948 do not apply to vessels "existing" before the Convention became effective. The certificate here relied upon appears to be totally lacking in probative value.

cated outside the engine room is a practice which is not uncommon in the maritime industry." 345 F.Supp. at 822.

We agree with Judge Levet's conclusion that the Marquette was unseaworthy because of her owners' failure to exercise due diligence.

## II.

The next issue arises from appellants' claim that they are exempt from liability under the Fire Statute [5] and COGSA.[6]

Pursuant to these statutory provisions, shipowners are exempt from liability for cargo damage caused by shipboard fire except when the fire is "caused by the design or neglect of such owner" (Fire Statute) or unless the fire is "caused by the actual fault or privity of the carrier" (COGSA). These two phrases have essentially the same meaning.

Appellants urge as to each a narrow reading of the exception to the exemption. Under their construction, a fire ignited because of lack of due diligence by the shipowner would result in liability, but failure to maintain equipment adequate to extinguish a nonnegligently ignited fire before it causes the damage would not. Judge Levet rejected this construction. He held that an inexcusable condition of unseaworthiness of a vessel, which in fact *causes the damage*—either by starting a fire or by preventing its extinguishment—will exclude the shipowners from the exemption of the Fire Statute and COGSA. We agree.

Several courts have indicated that the exception to the general statutory exemptions applies where the shipowner's negligence did not cause ignition of the fire but where damage to the cargo could have been prevented despite the ignition of the fire had it not been for the negligence of the shipowner. American Mail Line, Ltd. v. Tokyo Marine and Fire Ins. Co., Ltd., 270 F.2d 499, 501 (9 Cir. 1959); Rio Gualeguary, 205 F.2d 886, 889 (5 Cir.) (dictum), cert. denied sub nom. Fidelity-Phenix Fire Ins. Co. v. Flota Mercante Del Estado, 346 U.S. 915 (1953); Globe & Rutgers Co. v. United States, 105 F.2d 160, 165–66 (2 Cir.) (dictum), cert. denied, 308 U.S. 611 (1939); The Virginia, 264 F. 986, 996 (D.Md.1920), aff'd sub nom. Hines v. Butler, 278 F. 877 (4 Cir. 1921), cert. denied, 257 U.S. 659 (1922). Such interpretation of the exception to the fire exemption statutory provisions is consistent with the wise observation that "the warranty of seaworthiness is a favorite of the admiralty and exceptions to it or limitations upon it, are narrowly scrutinized." Metropolitan Coal Co. v. Howard, 155 F.2d 780, 783–84 (2 Cir. 1946) (L. Hand, J.).

Generally a shipper can recover against the carrier for damage to his goods merely by showing that the carrier received the goods in sound condition and delivered them damaged. See, e. g., American Tobacco Co. v. The Katingo Hadjipatera, 81 F.Supp. 438, 445 (S.D.N.Y.1948), aff'd, 194 F.2d 449 (2 Cir. 1951), cert. denied, 343 U.S. 978 (1952). The burden of proof is on the carrier to show that he exercised due diligence. The fire exemption provisions merely shift this burden of proof

---

5. The Fire Statute, 46 U.S.C. § 182, provides:

"Loss by Fire

No owner of any vessel shall be liable to answer for or make good to any person any loss or damage, which may happen to any merchandise whatsoever, which shall be shipped, taken in, or put on board any such vessel, by reason or by means of any fire happening to or on board the vessel, unless such fire is caused by the design or neglect of such owner."

6. Section 4(2)(b) of COGSA, 46 U.S.C. § 1304(2)(b), provides:

"Rights and Immunities of Carrier and Ship—Unseaworthiness
* * *
Uncontrollable causes of loss
(2) Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from—
* * *
(b) Fire, unless caused by the actual fault or privity of the carrier;
. . . ."

to the shipper.[7] If the carrier shows that the damage was caused by fire, the shipper must prove that the carrier's negligence caused the damage. To interpret these provisions, as appellants invite us to do here, so that the shipper cannot recover against the carrier even though he shows that the damage would not have occurred but for a condition of unseaworthiness caused by the carrier's negligence—because the condition pertained to *control* of the fire rather than its *ignition*—would run counter to the principle announced in *Metropolitan Coal*. We decline the invitation.

We hold, as the district court did, that appellants are not exempt from liability under the Fire Statute or COGSA.

In short, we affirm on the well reasoned opinion of Judge Levet below. 345 F.Supp. 814 (S.D.N.Y.1972).

Affirmed.

7. The only other effect of these provisions is that the "design or neglect" through which the owner loses the exemption must be personal to him. Walker v. The Western Transp. Co., 70 U.S. (3 ·Wall.) 150 (1866). Negligence on the part of the master, mariners, or other agents is not attributable to the owner under principles of *respondeat superior*. Appellants assert no claim here of freedom from liability on that basis.