In the Matter of the Complaint of TA CHI
NAVIGATION (PANAMA) CORP., S.
A., as Owner of the S.S. EURYPYLUS
for Exoneration from or Limitation of
Liability.

No. 107, Docket 81–7014.

United States Court of Appeals,
Second Circuit.

Argued Oct. 22, 1981.

Decided April 14, 1982.

York, sitting by designation.

Vincent J. Barra, New York City (Dougherty, Ryan, Mahoney, Pellegrino, Giuffra & Zambito, New York City, on the brief), for appellant.

Joseph M. Mangino, New York City (Hill, Rivkins, Carey, Loeberg, O'Brien & Mulroy, New York City, on the brief), for cargo-claimants.

Charles C. Goodenough, New York City (Donovan, Maloof, Walsh & Kennedy, New York City, on the brief), for Citibank.

Before MANSFIELD, VAN GRAAFEILAND and KEARSE, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York, C. H. Tenney, J., denying the petition of a shipowner for exoneration from or limitation of liability for cargo damage claims resulting from a shipboard explosion and fire. Because the district court erred in fixing the elements and burdens of proof, we reverse and remand for further proceedings.

Judge Tenney's opinion, reported at 504 F.Supp. 209, contains a comprehensive

statement of the facts. A short summary will therefore suffice for our purpose. The stricken ship was the *S.S. Eurypylus*, owned by Ta Chi Navigation (Panama) Corp., and the fire occurred on November 10, 1975 while she was en route from Japan to Panama. The ship was gutted and sold for scrap, and most of her cargo was destroyed. The district court found that the fire began when acetylene gas escaping from a welding hose in the ship's engine room was ignited by a spark. Cylinders containing oxygen and acetylene, stored in a port tonnage alleyway near the engine room, two of which were feeding the torch, promptly exploded,[1] and the fire was almost immediately out of control. The district court predicated its finding of liability upon the presence of the cylinders in the alleyway, and the propriety of such storage was the most vigorously contested issue on the trial.

Cargo claimants produced two expert witnesses in support of their contention that the storage was improper. The shipowner produced substantial evidence to the contrary. That evidence showed that the ship was built in Scotland in 1958 and carried a 100 A–1 classification with Lloyds Register of Shipping from the time it was built, indicating thereby that the ship was of the best quality. There was also testimony that a storage rack for the oxygen and acetylene cylinders was installed in the alleyway when the ship was built. From time to time thereafter, the ship was checked by representatives of Lloyds, and safety equipment certificates were issued in accordance with Safety of Life at Sea regulations (SOFAS), which were prepared under the auspices of the Intergovernmental Maritime Consultive Organization (IMCO). One such inspection was made in April, 1972 while the *Eurypylus* was owned by Compania Maritima San Basilio, the company which sold the vessel to Ta Chi in 1974. Another inspection was made in April, 1974. In September, 1974, before the *Eurypylus* was delivered to Ta Chi, it was inspected by the United States Coast Guard to insure that it met safety requirements for carrying passengers. *See* 46 C.F.R. § 70.05–3(a)(1). Because Ta Chi was going to change the vessel's flag registry from Greek to Panamanian, still another survey was conducted by Lloyds just prior to the transfer of the ship in December 1974. In none of these inspections was the location of the oxygen and acetylene cylinders faulted.

Captain William Roden, a retired Coast Guard officer with twenty-one years of specialized service in marine safety inspection, testified that the storage location of the cylinders on the *Eurypylus* met the safety requirements of the United States Coast Guard. When asked his own expert opinion concerning such storage, Captain Roden said:

My opinion is that the location that they are shown as being stowed on the diagram is quite proper and that were I to be making the decision on the storage, I would approve the storage in that position.

Frank Rushbrook, appellant's other expert, testified that, if he had gone on the ship prior to the accident and seen the cylinders where they were, he "would have been quite happy with them." Both of the ship's experts testified that oxygen and acetylene cylinders are often found inside the engine room itself.

It is in the light of this testimony that the district court's discussion of the elements and burdens of proof must be examined. The district judge said that "the [shipowner] is required to prove that the vessel was seaworthy at the commencement of the voyage." 504 F.Supp. at 229. He continued, "If the petitioner failed to use due and proper care, *i.e.*, due diligence, to provide a competent master and crew and to see that the ship was seaworthy at the commencement of the voyage, then any loss occurring by reason of fault or neglect in these particulars is within its privity, and it

---

1. The district court found that there was only one heavy explosion at the time of the inception of the fire and that the oxygen and acety-lene cylinders exploded almost simultaneously with the explosion of gas in the engine room space. 504 F.Supp. at 232.

may not avail itself of the fire exemption statutes." *Id.* at 230. He went on:

In the instant case we are concerned with whether the carrier had exercised due diligence under § 1303 before and at the commencement of the voyage to make *S.S. EURYPYLUS* seaworthy, to properly man, equip, and supply her, and to make her holds fit and safe for the reception, carriage, and preservation of cargo. (*Id.*)

He then concluded that the storage of the oxy-acetylene cylinders in the port tonnage alleyway rendered the *Eurypylus* unseaworthy at the commencement of the voyage. *Id.* at 233.

▮ The district court's approach to the burden of proof is not as straightforward as we have presented it. It is clear, however, that the entire approach reflects a misunderstanding of the terms of the Fire Statute as they have been applied by the Supreme Court and the courts of this Circuit. The Fire Statute, 46 U.S.C. § 182, exonerates the shipowner from liability for fire damage to cargo unless the fire was caused by the "design or neglect" of the owner. "Neglect", as thus used, means negligence, not the breach of a non-delegable duty. *Consumers Import Co. v. Kabushiki Kaisha Kawasaki Zosenjo,* 320 U.S. 249, 252, 64 S.Ct. 15, 16, 88 L.Ed. 30 (1943); *Earle & Stoddart, Inc. v. Ellerman's Wilson Line, Ltd.,* 287 U.S. 420, 427, 53 S.Ct. 200, 201, 77 L.Ed. 403 (1932). "If the carrier shows that the damage was caused by fire, the shipper must prove that the carrier's negligence caused the damage." *Asbestos Corp. Ltd. v. Compagnie De Navigation Frais-Sinet Et Cyprien Fabre,* 480 F.2d 669, 673 (2d Cir. 1973). *See American Tobacco Co. v. The Katingo Hadjipatera,* 194 F.2d 449, 450 (2d Cir. 1951), *cert. denied,* 343 U.S. 978, 72 S.Ct. 1076, 96 L.Ed. 1370 (1952); *Hoskyn & Co. v. Silver Line,* 143 F.2d 462, 465 (2d Cir.), *cert. denied,* 323 U.S. 767, 65 S.Ct. 116, 89 L.Ed. 613 (1944); *Consumers Import Co. v. Kawasaki Kisen Kabushiki Kaisha,* 133 F.2d 781, 784–85 (2d Cir.), *aff'd,* 320 U.S. 249, 64 S.Ct. 15, 88 L.Ed. 30 (1943); *Globe & Rutgers Fire Insurance Co. v. United States,* 105 F.2d 160, 166 (2d Cir.), *cert. denied,* 308 U.S. 611, 60 S.Ct. 175, 84 L.Ed. 511 (1939); *Petition of Skibs A/S Jolund,* 144 F.Supp. 47, 50 (S.D.N.Y.1956), *rev'd on other grounds,* 250 F.2d 777 (2d Cir. 1957); *The Cabo Hatteras,* 5 F.Supp. 725, 728 (S.D. N.Y.1933). The shipper can prove that the carrier caused the damage either by proving that a negligent act of the carrier caused the fire or that such an act prevented the fire's extinguishment. *Asbestos Corp. Ltd., supra,* 480 F.2d at 672.

This delineation of the carrier's liability did not change with the 1936 enactment of the Carriage of Goods by Sea Act (COGSA), ch. 229 § 1–16, 49 Stat. 1207 (current version at 46 U.S.C. §§ 1300–1315). Congress specifically provided that COGSA shall not affect the rights and obligations of the carrier under the Fire Statute. 46 U.S.C. § 1308. Congress also included in COGSA a provision that the carrier shall not be responsible for fire damage resulting from fire "unless caused by the actual fault or privity of the carrier." 46 U.S.C. § 1304(2)(b).

When COGSA was under consideration by the House Committee on Merchant Marine and Fisheries, the suggestion was made that "since this bill itself in section 8 disclaims all intent to modify the fire statute, and there is no apparent reason why it should be modified," the words "design or neglect of the carrier" as used in the Fire Statute be substituted for the words "fault or privity of the carrier" in the proposed Act. Hearings on S.1152 before the House Committee on Merchant Marine and Fisheries, 74th Cong. 2d Sess. 13 (1936). However, it was pointed out that "the word 'fault' corresponds generally to the word 'neglect' and the word 'privity' to the word 'design' ", *id.* at 141, and the words "fault" and "privity" were retained in the statute.

We have adopted that reasoning in this Circuit and treat the COGSA fire exemption as being the same as that of the Fire Statute. *Asbestos Corp. Ltd. v. Compagnie De Navigation Frais-Sinet Et Cyprien Fabre, supra,* 480 F.2d at 672; *The Automobile Insurance Co. v. United Fruit Co.,* 224 F.2d

72, 75 (2d Cir.), *cert. denied*, 350 U.S. 885, 76 S.Ct. 138, 100 L.Ed. 780 (1955); *Alfa Romeo, Inc. v. S.S. "Torinita"*, 499 F.Supp. 1272, 1282 n.7 (S.D.N.Y.1980); *see J. Howard Smith, Inc. v. S.S. Maranon*, 501 F.2d 1275, 1277 (2d Cir. 1974), *cert. denied*, 420 U.S. 975, 95 S.Ct. 1399, 43 L.Ed.2d 655 (1975).

Unfortunately, the district court patterned its holding upon that of the Ninth Circuit in *Sunkist Growers, Inc. v. Adelaide Shipping Lines, Ltd.*, 603 F.2d 1327 (9th Cir. 1979), *cert. denied*, 444 U.S. 1012, 100 S.Ct. 659, 62 L.Ed.2d 640 (1980). In *Sunkist*, the Ninth Circuit held that the burden of proof is on the carrier to show that it exercised due diligence to provide a seaworthy ship in order to invoke the provisions of either section 1304(2)(b) or the Fire Statute. *Id.* at 1336. Commenting on this Court's holding in *Asbestos Corp. Ltd. v. Compagnie De Navigation, supra*, 480 F.2d 669, that the shipper must prove that the carrier's negligence caused the fire damage, the Ninth Circuit stated that the "use of this language was entirely unnecessary" and constituted a "casual treatment of the burden of proof by the author of the appellate court opinion." 603 F.2d at 1335. Strangely enough, the author of *Sunkist* did not fault the district court judge in *Asbestos* for holding that "[o]nce the defendant has sustained the burden of proving that it comes within the exemption of COGSA § 1304(2)(b) or the Fire Statute the burden then shifts to the shipper to prove that the fire was caused by the 'design or neglect' or 'actual fault or privity' of the carrier". 345 F.Supp. 814, 821.

We disagree not only with *Sunkist's* unflattering characterization of Judge Timbers' opinion in *Asbestos*, an opinion that was concurred in by Judges Smith and Hayes, but also with the Ninth Circuit's interpretation of the interrelation between the Fire Statute and COGSA, an interpretation that is concurred in by no other Circuit. The "ping pong" effect of the shifting burden of proof under section 1304(2), *Nitram, Inc. v. Cretan Life*, 599 F.2d 1359, 1373 (5th Cir. 1979) did not receive its first recognition by this Court in *Asbestos Corp. v. Compagnie De Navigation Frais-Sinet Et Cyprien Fabre, supra*. In *American Tobacco Co. v. The Katingo Hadjipatera, supra*, decided twenty-two years prior to *Asbestos Corp.*, Judge Frank, writing for himself, Judge Swan, and Judge Learned Hand, said that, once a shipowner established loss by fire, "[n]o liability could be imposed unless the owners of [cargo] carried the burden of proving that the fire was caused by the shipowner's design or negligence or the carriers' actual fault or privity." 194 F.2d at 450. *See also J. Gerber & Co. v. S.S. Sabine Howaldt*, 437 F.2d 580, 588 (2d Cir. 1971); *Lekas & Drivas, Inc. v. Goulandris*, 306 F.2d 426, 432 (2d Cir. 1962); *Automobile Insurance Co. v. United Fruit Co., supra*, 224 F.2d at 75.

■ When Congress wanted to put the burden of proving freedom from fault on a shipowner claiming the benefit of an exemption, it specifically said so. *See* 46 U.S.C. § 1304(2)(q). The *Sunkist* court would read the language of subsection (q) into subsection (b), "although Congress did not put it there." *See Lekas & Drivas, Inc. v. Goulandris, supra*, 306 F.2d at 432. This Court has not put it there either. We adhere to our prior holdings that, if the carrier shows that the damage was caused by fire, the shipper must prove that the carrier's negligence caused the fire or prevented its extinguishment. If on remand the shipper fails to meet this burden, the action must be dismissed. Only if the shipper sustained the burden would the carrier have the obligation to establish what portion of the damage was not attributable to its fault. *Great Atlantic & Pacific Tea Co. v. Brasileiro*, 159 F.2d 661, 664 (2d Cir.), *cert. denied*, 331 U.S. 836, 67 S.Ct. 1519, 91 L.Ed. 1849 (1947).

■ For the guidance of the district court on remand we direct its attention to two other errors. In making his finding on the issue of the unseaworthiness of the stowage of the cylinders and the practice of leaving the door open, the district judge relied partially on the testimony of one Helmut Schnitger, an independent expert

called by the cargo claimants to testify on foreign regulations, who had not been listed by them as a witness in the pretrial order. Through Schnitger the claimants introduced certain German regulations governing the stowage of oxy-acetylene cylinders. The only translation of these regulations that was offered was Schnitger's own translation of a single paragraph of them. The court allowed the introduction of these regulations into evidence over the objection of Ta Chi that the entire book was in German. We believe that it was error to admit these regulations and to allow Schnitger to testify to them without requiring the shippers first to provide an independent English translation of all relevant portions of the book.

When Schnitger further testified on cross-examination that he had performed a safety survey of the vessel *Levant Clipper*, one of Ta Chi's attorneys, Mr. Barra, who was intimately familiar with that ship, sought permission from the court to testify in rebuttal that Schnitger had approved the stowage of oxy-acetylene cylinders inside the engine room of that vessel. Barra's request was denied on the ground that as an advocate he should not appear as a witness. See American Bar Association, Code of Professional Responsibility, DR 5–101.[2] However, that Rule applies where the lawyer knows or it is obvious that he will be called. An exception is also made for the case where the lawyer's refusal to testify "would work a substantial hardship on the client". Under the circumstances here, where Ta Chi had no pretrial notice that Schnitger would be called, which might have enabled it to locate another witness, and the testimony went to a core issue, it was error to hold Barra's testimony to be per se inadmissible.

The judgment is reversed and the case remanded for further proceedings consistent with this opinion.

**2.** DR 5–101(B) provides:

> A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employ-

ment and he or a lawyer in his firm may testify....

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.