911 F.2d 519
 1991 A.M.C. 439
 BANANA SERVICES, INC., Plaintiff-Appellant,
v.
M/V FLEETWAVE, her engines, tackle, furnishings, etc., In
Rem, United Brands Company, a foreign corporation
or other business entity, In Personam,
Defendants-Appellees.
 No. 89-3372
Non-Argument Calendar.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 7, 1990.
 
 Thomas E. Fotopulos, Tampa, Fla., for plaintiff-appellant.
 Brendan P. O'Sullivan, Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, Fla., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before Judges TJOFLAT, Chief Judge, JOHNSON, Circuit Judge, and HILL, Senior Circuit Judge.
 HILL, Senior Circuit Judge:
 
 
 1
 This case concerns a shipment of rotting plantains. The plantain, or musa para disiaca, is the first cousin of the banana. "It is distinguished in appearance from the ordinary banana by its angular shape and yellowish green color."[1] Plantains share one important characteristic with their cousin, the ordinary banana; they like to ripen in a certain way.[2]
 
 
 2
 The appellant in this case, Banana Services, Inc., ("Banana") alleges that plantains shipped from Colombia to Florida by the appellees were damaged in transit. Appellees claim that the plantains ripened prematurely due to Banana's mishandling of the fruit prior to loading in Colombia. The parties agree that when the plantains were loaded onto United Brands Company's ("United") plantain carrying vessel, the Fleetwave, they were in good condition. However, when the fruit arrived at Port Manatee, Florida, the plantains were surveyed immediately upon the vessel's arrival, and found to be overripe.[3] It then became the district judge's responsibility to determine the cause of this ferment.[4]
 
 
 3
 The case was tried without a jury, and the district court made extensive findings of fact, all of which were adopted by the parties to this appeal. In its findings the court noted that plantains continue to mature and ripen after being harvested:
 
 
 4
 It is imperative that the cutting, loading, refrigeration, and ventilation of plantains occur on a rigidly controlled schedule, when destined for distant markets. A failure to properly load, refrigerate, or ventilate could and likely will result in damage to the fruit in the form of ripening before reaching market.
 
 
 5
 To avoid damage, plantains must be refrigerated shortly after cutting so as to retard ripening. Experts for both parties generally agree that the plantains should be loaded into a refrigerated space not more than 24 to 48 hours after harvest....
 
 
 6
 If plantains are cut too late or refrigerated more than 24 to 48 hours after cutting, the fruit may reach a ripening stage called the "climacteric" phase before refrigeration is accomplished. During the climacteric phase the plantains emit substantial amounts of ethylene gas. If this gas is released in an enclosed space it will accelerate the ripening process of other plantains. This is so even if the other plantains were properly cut and loaded, ventilated and refrigerated in a timely manner.[5]
 
 
 7
 The court concluded that if the plantains were in or near the climacteric phase before refrigeration there is "literally nothing which can be done to retard ripening," no matter how carefully the plantains are handled aboard ship. The court also noted that
 
 
 8
 Banana's inspectors smelled ethylene gas upon boarding the vessel, an indication that some of the shipment had entered the climacteric phase prematurely.
 
 
 9
 In its findings of fact the court similarly noted that once the plantains are loaded, the handling procedures used on board ship are equally intricate and vital to prevent the plantains from reaching the climacteric phase prematurely. Within 24 to 36 hours of loading, the pulp temperature must be reduced to within four degrees fahrenheit of the constant temperature at which the plantains are to be kept until unloaded. There are also strict requirements regarding continued refrigeration.[6]
 
 
 10
 Based on the evidence presented at trial, the district court concluded that although the plantains were harvested at the correct time, it was not clear that Banana actually loaded the plantains into refrigerated space within 24 to 48 hours after cutting. On the other hand, the court determined that the crew of the Fleetwave did everything required to ship the plantains in a safe condition.
 
 
 11
 In order to resolve this unappetizing dispute, the trial court was required to peel away the complexities of the governing statute, the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.App. Sec. 1300 et seq. Under COGSA, a carrier, in this case United, is responsible for properly and carefully loading, handling, storing and caring for the goods carried. 46 U.S.C.App. Sec. 1303(2). The burden of proof under COGSA shifts more frequently than the wind on a stormy sea.[7] The plaintiff bringing suit under COGSA must first establish a prima facie case by proving that the cargo at issue was loaded in an undamaged condition, and discharged in a damaged condition. Quaker Oats Company v. M/V Torvanger, 734 F.2d 238, 240 (5th Cir.1984), cert. denied, 469 U.S. 1189, 105 S.Ct. 959, 83 L.Ed.2d 965 (1983). Once a plaintiff has shown a prima facie case the burden shifts to the carrier to prove that it exercised due diligence to prevent damage, or that the damage was caused by one of the "excepted causes" enumerated in section 1304(2). Quaker Oats, 734 F.2d at 240; see also Schnell v. The Vallescura, 293 U.S. 296, 303, 55 S.Ct. 194, 195, 79 L.Ed. 373 (1934). If the carrier meets this burden by proving a section 1304(2) excepted cause, the burden returns to the plaintiff to establish that the carrier's negligence contributed to the damage. Blasser Brothers, Inc. v. Northern Pan American Line, 628 F.2d 376, 382 (5th Cir.1980).
 
 
 12
 At issue in this case is the following excepted cause:
 
 
 13
 Uncontrollable causes of loss.
 
 
 14
 Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from--
 
 
 15
 ....(m) Wastage in bulk or weight or any other loss or damage arising from inherent defect, quality, or vice of the goods.
 
 
 16
 46 U.S.C.App. Sec. 1304(2)(m). The parties to this dispute agreed that Banana presented a prima facie case. However, the district court concluded that United had successfully met its burden of demonstrating that the plantains were overripe when unloaded in Port Manatee because of an inherent defect: the advanced ripening of the fruit due to Banana's delay in getting the fruit to the Fleetwave.
 
 
 17
 In this appeal Banana argues that the district court improperly shifted the burden of proof. Essentially, it argues that United cannot prove an inherent defect existed merely by showing that it handled the fruit properly, and that Banana may not have.
 
 
 18
 We agree that proof of due care on the part of the carrier coupled with conclusive evidence regarding the delicate nature of this particular cargo resulted in a circumstantial case of an inherent defect in the cargo. Indeed, that is the only explanation for the loss. If Banana had produced satisfactory proof that the plantains had been handled properly prior to shipment, then it may have prevailed on its claim that United did not meet its burden. However, in this case, the district court made perfectly clear that the evidence Banana sought to produce of its own proper handling of the fruit was completely unreliable.
 
 
 19
 One might say that the real problem was that the plantains were delivered in a bad condition, thus defeating the presentation of a prima facie case. However, that is not completely accurate, because the plantains seemed to be in good condition at the time they were delivered to the Fleetwave for loading. The problem was that they were infected with an inherent flaw, the tendency to ripen prematurely, that would turn the good cargo into defective cargo no matter how carefully the plantains were handled en route.
 
 
 20
 It is clear that proof of inherent vice in the cargo can be accomplished by circumstantial evidence. Cf., Fine Foliage of Florida, Inc. v. Bowman Transportation, Inc., 901 F.2d 1034 (11th Cir.1990) (court may rely upon circumstantial evidence to establish the original condition of goods if the evidence is substantial and reliable); see also Roman Crest Foods, Inc. v. S.S. Delta Columbia, 574 F.Supp. 440 (S.D.N.Y.1983) (proof of inherent flaw may be demonstrated by showing that nectarines were properly handled during shipping). When the Fleetwave arrived it was apparent that something was rotting in the Port of Manatee; however, the district court did not err in determining that the blame rested at the doorstep of Banana.
 
 The judgment of the district court is
 
 21
 AFFIRMED.
 
 
 
 [1]
 Webster's Third New International Dictionary (1971)
 
 
 [2]
 Indeed, this entire case turns on the issue of ripeness: "Ripeness is all." William Shakespeare, King Lear, Act V, Scene II, Line 9. We need not decide whether King Lear was referring to plantains or bananas
 
 
 [3]
 The parties did not raise the issue of mitigation of damages. We are, therefore, not informed as to whether the overripe plantains could be used to make banana bread, or its equivalent, plantain bread
 
 
 [4]
 More than one case of bad bananas has made its way to federal court. See e.g., Horn v. Cia de Navegacion Fruco, S.A., 404 F.2d 422, 435 (5th Cir.1968), cert. denied, 394 U.S. 943, 89 S.Ct. 1272, 22 L.Ed.2d 477 (1969)
 
 
 [5]
 It thus seems that if even a few plantains have simultaneously reached the climacteric stage, this can cause the other plantains to ripen despite themselves; or, as it is written, "unus putridus fructus contaminabit omnes."
 
 
 [6]
 The difficulties involved in successfully shipping bananas and plantains have been well documented, and the resultant banana (and plantain) shortages have inspired such spritely yet mournful lamentations as the following, "Yes, We have No Bananas."
 Yes! We have no bananas,
 We have no bananas today.
 We've string beans and honions [sic],
 cabbages and scallions and all kinds
 of fruit and fay--
 We have an old-fashioned tomahto--
 Long Island potahto--
 But yes we have no bananas--
 We have no bananas today.
 --Frank Silver & Irving Cohn (1923)
 
 
 [7]
 As one prominent poet noted, one of life's ultimate questions regarding ripe fruit relates to who has the burden of proof:
 Who of men
 can tell that flowers
 would bloom, or that
 green fruit would swell
 to melting pulp?
 John Keats, Endymion, Book I, Line 835.