United States Court of Appeals,

Eleventh Circuit.

No. 94-2214.

BANANA SERVICES, INC., Plaintiff-Counter-Defendant-Appellant-Cross-Appellee,

v.

M/V TASMAN STAR, her engines, tackle, furnishings, etc., in rem, Defendant-Cross-Defendant-Appellee-Cross-Appellant,

Star Reefers, Ltd., a foreign business entity, in personam, Defendant-Cross-Claimant-Appellee,

Navegantes Del Oriente, S.A., a foreign business entity, in personam, Defendant-Claimant-Cross-Defendant-Counter-Claimant-Appellee-Cross-Appellant.

Nov. 3, 1995.

Appeals from the United States District Court for the Middle District of Florida. (No. 91-772-CIV-T-21A), Ralph W. Nimmons, Jr., Judge.

Before BLACK, Circuit Judge, HILL, Senior Circuit Judge, and ALAIMO[*], Senior District Judge.

BLACK, Circuit Judge:

Plaintiff-Appellant Banana Services, Inc. (Banana Services) appeals the district court's entry of judgment in favor of Defendants-Appellees Star Reefers, Ltd. (Star Reefers), Navegantes Del Oriente, S.A. (Navegantes) and the M/V TASMAN STAR on Appellant's claim for damages due to the spoilation of a cargo of bananas. This appeal requires us to decide whether a carrier, under the Carriage of Goods by Sea Act, 46 U.S.C.App. §§ 1300-1315 (COGSA), must first demonstrate it acted with due diligence to provide a seaworthy vessel for transport before the carrier may

---

[*]Honorable Anthony A. Alaimo, Senior U.S. District Judge for the Southern District of Georgia, sitting by designation.

invoke the "fire defense" of COGSA and the Fire Statute, 46 U.S.C.App. § 182.[1]  We conclude that a carrier does not bear this burden, and therefore affirm the district court's judgment.

## I. BACKGROUND

Navegantes is the owner and operator of the M/V TASMAN STAR. Prior to the events at issue, Navegantes time-chartered the TASMAN STAR to Star Reefers.  In September 1990, Star Reefers contracted with Banana Services to transport a cargo of fruit from South America to Florida aboard the TASMAN STAR.  The contract between Banana Services and Star Reefers stated Star Reefers accepted "liability for any cargo carried in accordance with the U.S. Carriage of Goods by Sea Act."

In early June 1991, Banana Services delivered boxes of bananas and plantains to the vessel at Puerto Bolivar, Ecuador, and Turbo, Colombia.  At both locations, the cargo was accepted, and the crew of the TASMAN STAR issued clean bills of lading.  On June 9, 1991, the vessel departed from Turbo en route to Port Manatee, Florida.

---

[1]Banana Services also argues the district court erred:  (1) in concluding Banana Services was not a third-party beneficiary of the charter contract between Navegantes and Star Reefers;  (2) in not applying the rule of *The Pennsylvania,* 86 U.S. (19 Wall.) 125, 22 L.Ed. 148 (1873), to find certain violations of international safety conventions were a contributing cause of the cargo loss;  (3) in not finding the carriers' failure to comply with Banana Services' carrying instructions was a contributing factor in the cargo's spoilation;  (4) in not granting Banana Services a rebuttable presumption the refrigeration control panels were unseaworthy;  and (5) in requiring Plaintiff to prove the "exact cause" of the fire in order to overcome the Defendants' fire defense.  We affirm the district court's resolution of these issues.  *See* 11th Cir. R. 36-1.

Navegantes cross-appeals the denial of its counterclaim against Banana Services for the costs Navegantes incurred in disposing of the rotten bananas and plantains.  We affirm the district court's denial of this claim.

That same day, approximately 21/2 hours into the voyage, a fire broke out in the engine room of the vessel. Although the crew extinguished the fire approximately an hour after it started, the fire damaged the ship's refrigeration control panels. As a result, the vessel was unable to properly refrigerate its cargo of bananas and plantains. The ship's chief engineer determined he could not temporarily repair the refrigeration panels, so the ship's officers decided to return to Turbo, Colombia.

The TASMAN STAR arrived back in Turbo on June 10, and representatives of Star Reefers and Navegantes met to discuss what options were available to protect the perishable cargo. Banana Services participated in these discussions by telephone. Based upon the advice of engineers and technical managers, the parties determined they could not repair the refrigeration system in time given Turbo's limited repair facilities and the need for particular replacement parts. The parties considered transferring the cargo to another vessel chartered by Star Reefers, but this option involved considerable delays and risked damaging the cargo. Moreover, Banana Services indicated that it would not make a final decision regarding transshipment. Navegantes and Star Reefers eventually decided to proceed to Port Manatee with the cargo aboard the TASMAN STAR. The ship departed Turbo approximately 22 hours after returning to port.

The ship arrived at Port Manatee on June 13, 1991. Surveyors for each party inspected the cargo, and they unanimously agreed the fruit was unmarketable because the pulp temperature of the fruit exceeded industry standards. Banana Services refused to take

delivery of the fruit, and Navegantes bore the costs of disposing of the cargo.

Banana Services brought suit against Navegantes and Star Reefers for more than $1.1 million in damages resulting from the loss of the cargo. After a lengthy bench trial, the district court entered judgment against Banana Services. Banana Services appeals, contending the district court misapplied the governing law of COGSA.

## II. DISCUSSION

Under COGSA, a shipper seeking recovery from a carrier for damages to its cargo bears the initial burden of proving a prima facie case. *Terman Foods, Inc. v. Omega Lines,* 707 F.2d 1225, 1227 (11th Cir.1983); *Blasser Bros. v. Northern Pan-American Line,* 628 F.2d 376, 381 (5th Cir.1980). The shipper establishes a prima facie case by demonstrating the cargo was loaded in an undamaged condition, and discharged in a damaged condition. *Banana Services, Inc. v. M/V FLEETWAVE,* 911 F.2d 519, 521 (11th Cir.1990); *Blasser Bros.,* 628 F.2d at 381. A clean bill of lading creates a rebuttable presumption the goods were delivered to the carrier in good condition and thus satisfies this element of the plaintiff's prima facie case. *Terman Foods,* 707 F.2d at 1227; *Emmco Ins. Co. v. Wallenius Caribbean Line, S.A.,* 492 F.2d 508, 513 (5th Cir.1974). The parties do not contest Banana Services established its prima facie case.

Once a shipper establishes a prima facie case, the burden of proof shifts to the carrier to demonstrate either (1) it exercised due diligence to prevent the cargo damage or (2) the damage was

caused by an "excepted cause" listed in 46 U.S.C.App. § 1304(2). *Banana Services,* 911 F.2d at 521; *Blasser Bros.,* 628 F.2d at 381. This section provides a carrier is not responsible for cargo damage resulting from a fire unless the damage is "caused by the actual fault or privity of the carrier." 46 U.S.C.App. § 1304(2)(b). In addition to the excepted cause for fire, COGSA also preserves a carrier's defense under the Fire Statute, 46 U.S.C. § 182. *See* 46 U.S.C. § 1308. The Fire Statute exonerates carriers from liability for fire damage to cargo unless the fire was caused by the "design or neglect" of the owner. 46 U.S.C. § 182. Though the "actual fault or privity" language of section 1304(2)(b) differs from the "design or neglect" language of the Fire Statute, the phrases are functionally equivalent. *See In re Complaint of Damodar Bulk Carriers,* 903 F.2d 675, 686 n. 14 (9th Cir.1990); *In re Complaint of Ta Chi Navigation (Panama) Corp., S.A.,* 677 F.2d 225, 228 (2d Cir.1982); *Asbestos Corp. v. Compagnie de Navigation Fraissinet et Cyprien Fabre,* 480 F.2d 669, 672 (2d Cir.1973).

The district court correctly concluded that the cargo was destroyed by fire because the fire in the TASMAN STAR's refrigeration panels prevented the ship from refrigerating the fruit. As a result, the cargo spoiled during the trip from Turbo to Port Manatee. A fire need not directly ignite the cargo to be the cause of damage under COGSA. *See Westinghouse Electric Corp. v. M/V LESLIE LYKES,* 734 F.2d 199, 206 (5th Cir.) (reasoning the loss resulted from fire when the damage was caused by salt water used to extinguish the fire), *cert. denied,* 469 U.S. 1077, 105 S.Ct. 577, 83 L.Ed.2d 516 (1984).

Star Reefers and Navegantes invoke both the Fire Statute and section 1304(2)(b) in defense of Banana Services' claim. Banana Services argues they cannot invoke this defense without first demonstrating they acted with due diligence in providing a seaworthy vessel. The district court disagreed with Banana Services' position and concluded that COGSA does not limit the fire defense in this fashion.

There is conflicting authority as to whether carriers must demonstrate due diligence as a prerequisite to invoking the fire defense of COGSA or the Fire Statute. The Ninth Circuit has reasoned carriers must overcome this initial burden before they may raise the defense and shift the burden of proof back to the shipper. *Sunkist Growers, Inc. v. Adelaide Shipping Lines,* 603 F.2d 1327, 1335-36 (9th Cir.1979), *cert. denied,* 444 U.S. 1012, 100 S.Ct. 659, 62 L.Ed.2d 640 (1980).[2] The Second and Fifth Circuits, disagreeing with the Ninth Circuit's reasoning in *Sunkist,* have concluded COGSA does not condition a carrier's right to invoke the fire defense on his proving due diligence. *Westinghouse,* 734 F.2d at 206; *Ta Chi Navigation,* 677 F.2d at 229.

The holding in *Westinghouse* is consistent with this Court's precedent.[3] We find the reasoning of the Second and Fifth circuits

---

[2]Subsequently, the Ninth Circuit limited *Sunkist* 's application in a manner that brings that circuit closer to the positions of the Second and Fifth circuits. *See Damodar Bulk Carriers,* 903 F.2d at 686-87.

[3]In a case binding upon us, *see Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the former Fifth Circuit reasoned that under the Fire Statute:

> It is well settled that a shipowner is not liable for damages resulting from fire unless libellant [the

to be persuasive, and hold that COGSA does not require carriers to demonstrate due diligence as a condition precedent to invoking the fire defense of § 1304(2)(b) and the Fire Statute.

## III. CONCLUSION

To invoke the fire defense, Star Reefers and Navegantes only had to demonstrate the cargo was destroyed by fire. *Westinghouse*, 734 F.2d at 206; *Ta Chi Navigation,* 677 F.2d at 229. The district court correctly refused to impose upon Star Reefers and Navegantes the burden of demonstrating they acted with due diligence as a condition precedent to invoking the fire defense of COGSA and the Fire Statute.

AFFIRMED.

---

shipper] proves that the cause of the fire was due to the "design or neglect" of the owner, the burden being upon libellant [the shipper].

*Fidelity-Phenix Fire Ins. Co. v. Flota Mercante Del Estado,* 205 F.2d 886, 887 (5th Cir.), *cert. denied,* 346 U.S. 915, 74 S.Ct. 275, 98 L.Ed. 411 (1953). Banana Services' position is simply incompatible with *Fidelity-Phenix,* and the district court properly rejected it in favor of the approach outlined by the Fifth and Second circuits.